Melvin HAUGEN, as Father and Natural Guardian of Teresa Haugen, an infant under the age of 14 years, and Melvin Haugen, Individually, Plaintiffs,

v.

UNITED STATES of America, United States Department of Interior, the City of New York, and The New York City Board of Education, Defendants.

No. 78 C 2549.

United States District Court,
E. D. New York.

June 27, 1980.

Steven Siegel, Kew Gardens, N.Y., for plaintiffs.

Edward R. Korman, U.S. Atty., Brooklyn, N.Y. by Jan F. Constantine, Asst. U.S.

Atty., Brooklyn, N.Y., for Federal defendants.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

Plaintiffs, residents of the State of New York, bring this action to recover money damages for injuries allegedly sustained by the infant plaintiff when she fell from a pipe at Floyd Bennett Field, Gateway National Recreation Area. Jurisdiction is alleged to exist under the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.*, and 28 U.S.C. § 1346(b). The action is now before the court on the federal defendants' motion to dismiss the complaint for failure to state a claim upon which relief can be granted or, in the alternative, for summary judgment.

The amended verified complaint alleges that on November 15, 1977, plaintiff Teresa Haugen was taken to Gateway National Park with her sixth grade class pursuant to agreement made by the defendants. It is claimed that the park was under the supervision of the federal defendants. Plaintiffs further claim that at the time Teresa sustained her injuries she was under the care, custody and control of a Park Ranger, whose identity they suggest is unknown. The complaint avers that Teresa was directed by authorized agents or employees of defendants to climb upon a pipe not suited for that purpose and that their negligence in making such a direction, in failing to supervise her adequately, and in failing to maintain the premises in a safe condition caused plaintiff's injuries. They seek recovery of damages in the amount of $125,000.00.

The basic facts are not in dispute. It appears that the park at which the accident allegedly occurred is administered by the National Park Service, United States Department of the Interior, pursuant to 16 U.S.C. § 460cc *et seq.* By special use permit dated November 21, 1975, the National Park Service entered into an arrangement with the New York City Board of Education which permitted the Board to operate an environmental education center in certain areas of Floyd Bennett Field. The permit was valid for a period of five years and, among other things, included an indemnification clause by which

> "21. The permittee [Board of Education] agrees to indemnify and save harmless the United States from any and all losses including not only damage to Government property and injury to Government employees, but also judgements [sic], claims, settlements, or compromises for property damage, death or injury to all persons resulting from the exercise by the permittee and its employees, and students of the privileges granted herein."

It appears that on the day of the alleged accident plaintiff was taken to a field outside building 272 for a gardening demonstration by a teacher of the New York City Board of Education, Sam DePaola. Linda Jaconetta, an employee of Cornell University Cooperative Extension ("CCE"), conducted the demonstration. The record reveals that Ms. Jaconetta was hired, supervised and paid by Cornell University to serve as a gardening instructor for students of the New York City public schools. Her participation as instructor was pursuant to a Memorandum of Agreement between Gateway National Recreational Area and CCE.[1] Basically, the Agreement stated that CCE would provide, among other things, full and part-time staff members to provide education and training in gardening techniques at the park. Plaintiff, and her classmates, were present at the park in accordance with this agreement. Ms. Jaconetta is alleged to have directed the children to sit on the pipe from which plaintiff eventually fell.

Plaintiffs' theory of recovery against the federal defendants is two-fold. First, they claim the negligent and wrongful acts of Linda Jaconetta, an employee of CCE, are imputable to the United States on the ground that her employer had entered into

---

1. See Exhibit B, attached to the federal defendants' memorandum of law in support of their motion.

a partnership agreement with the United States. The sole support for this theory is the Memorandum of Agreement, mentioned above, which stated at paragraph 6:

> "It is mutually understood that all press releases and information pertaining to this project will acknowledge the partnership of Cooperative Extension, Cornell University. The following acknowledgement is satisfactory: 'a cooperative project of Gateway National Recreation Area and Cooperative Extension, Cornell University.'"

Second, plaintiffs claim that the federal defendants are liable as landowners for maintaining a hazardous condition on the land, namely the pipe from which plaintiff fell.

Under the circumstances presented, resolution of the action by summary judgment is appropriate as to the federal defendants. It is, of course, the rule that summary judgment may be rendered only "if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), F.R.Civ.P. In determining whether to grant a motion for summary judgment, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *American Mfrs. Mut. Ins. Co. v. American Broadcasting-Paramount Theatres, Inc.*, 388 F.2d 272, 279 (2d Cir. 1967), *quoted in Securities & Exchange Commission v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978). It must accept as true factual statements in the opposing party's affidavits, draw all permissible inferences in that party's favor, *Hill v. A–T–O, Inc.*, 535 F.2d 1349 (2d Cir. 1976), and resolve any doubts in favor of the latter, *American Mfrs. Mut. Ins. Co. v. American Broadcasting-Paramount Theatres, Inc., supra.*

"The very mission of the summary judgment procedure [however] is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Adv.Com. Note to Proposed Amendments to Rule 56(e), 31 F.R.D. 648 (1962). As the Court of Appeals for this circuit recently stated:

> "Thus, the mere possibility that a factual dispute *may* exist, without more, is not sufficient to overcome a convincing presentation by the moving party. See *Gatling v. Atlantic Richfield Co.*, 577 F.2d 185, 187–88 (2d Cir. 1978), *cert. denied*, 439 U.S. 868, 99 S.Ct. 181, 58 L.Ed.2d 169 (1979). The litigant opposing summary judgment, therefore, 'may not rest upon mere conclusory allegations or denials' as a vehicle for obtaining a trial. *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (1978). Rather, he must bring to the district court's attention some affirmative indication that his version of relevant events is not fanciful." *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir. 1980).

With these principles in mind, it is the court's view that summary judgment in the federal defendants' favor is appropriate, notwithstanding that the complaint sounds in negligence. See *Crum v. Continental Oil Co.*, 471 F.2d 784 (5th Cir. 1973); *Berry v. Atlantic Coast Line Railroad Co.*, 273 F.2d 572 (4th Cir.), *cert. denied*, 362 U.S. 976, 80 S.Ct. 1060, 4 L.Ed.2d 1011 (1960).

■■ Turning first to plaintiffs' contention that the federal defendants are responsible for the acts of Linda Jaconetta on the theory that she was either an employee of the government for purposes of invoking the Federal Tort Claims Act, 28 U.S.C. §§ 2671, 2672 or an employee of the CCE which had formed a partnership with the United States by the arrangement to use the park facilities, the court is of opinion that both arguments are wholly without merit. Under federal law applicable to the determination of whether one is an "employee" for purposes of the Federal Tort Claims Act, it is clear Ms. Jaconetta does not meet the standard. See *United States v. Becker*, 378 F.2d 319 (9th Cir. 1967); *Bruckner v. United States*, 338 F.2d 427 (9th Cir. 1964), *cert. denied*, 381 U.S. 937, 85 S.Ct. 1769, 14 L.Ed.2d 701 (1965). See also *Slagle v. United States*, 612 F.2d 1157 (9th

Cir. 1980). According to Ms. Jaconetta's deposition, the federal government exercised no control over her activities sufficient to establish her status as a federal government employee. Her activities were planned by CCE. She was supervised by CCE and paid by Cornell. It is not seriously contended that the CCE was or is a federal agency, despite its federal funding, so as to make its employees agents of the federal government for purposes of tort liability. *Cf. United States v. Holcombe*, 277 F.2d 143 (4th Cir. 1960). And, of course, the existence of federal funding, standing alone, does not establish an individual's status as a federal employee and hence the government's liability under the Federal Tort Claims Act. See *United States v. Orleans*, 425 U.S. 807, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976); *Prater v. United States*, 357 F.Supp. 1044 (N.D.Tex.1973).

■ Nor does plaintiffs' claim that the federal defendants are liable because of the acts of the employee of their "partner" in the arrangement at the park persuade the court that summary judgment is inappropriate. First, the claim is based, as noted above, on a single reference in the Memorandum of Agreement to a "partnership" for purposes of press releases presumably advertising the program. Whether State or federal law applies in determining whether a partnership was formed so as to render the United States liable for the acts or omissions of an employee of the CCE, the argument must fail. Not only does the Memorandum of Agreement taken as a whole reveal no intent that a partnership of the nature contemplated by plaintiffs be formed but also suggests—and this is confirmed by implementation of the program— that no such relationship actually arose. The affidavit of Samuel Holmes, Chief of Interpretation and Recreation at Gateway National Recreation Area, amply attests to the limited nature of the arrangement provided for by the Memorandum of Agreement. The very context of the paragraph containing the language relied upon by plaintiffs to support their partnership theory, moreover, underscores the weakness of the claim. Since plaintiffs point to no other

person who could colorably be considered a government employee or any other circumstances which justify holding the federal defendants liable for the acts of others, their first theory of recovery provides no basis for relief.

Plaintiffs' alternative contention that the federal defendants are liable as landowners fares no better. The parties agree that the standard of landowner liability applicable to this action is the New York rule imposing a standard of reasonable care under the circumstances, whereby foreseeability shall be a measure of liability. *Basso v. Miller*, 40 N.Y.2d 233, 386 N.Y.S.2d 564, 568, 352 N.E.2d 868, 872 (1976). And foreseeability is to be determined by weighing the likelihood of injury and the probable seriousness of that injury against the burden on a defendant of taking steps to protect against the risk altogether. *Id.*, 386 N.Y.S. at 568. See also *Rhabb v. New York City Housing Authority*, 391 N.Y.S.2d 540 (1976).

■ Applying these principles, there is no genuine issue as to any material fact and the federal defendants are entitled to judgment as a matter of law that they committed no act or omission constituting actionable negligence. The undisputed facts of record reveal that the pipe from which plaintiff fell, which was part of the Floyd Bennett Field central heating system but not now in use, was situated approximately a few inches off the ground and rose two and a half feet above the ground. It was surrounded by layers of insulation and there is neither claim nor evidence that the pipe was not properly maintained or was defective in any manner. The pipe system apparently runs throughout the area and is approximately 4100 feet in length. In these circumstances, it is apparent that the federal defendants breached no duty owed to plaintiff.

The condition created by the pipe system was open and highly visible. It simply is not the type of condition which could reasonably be expected to create a risk of harm sufficient to require protective measures. Since there is proof in the record

that, although not currently in use, the government desires to maintain the pipe system against the possibility that it will once again be put into use, the burden on the government of either dismantling the system or installing protective barricades is too great measured against the exceedingly minimal risk to require such steps be taken to avoid liability.[2] The court refuses to hold that such steps need be taken.

However much we may sympathize with plaintiff's misfortune in falling from the pipe, the federal defendants committed no act or omission requiring them to respond in damages. Plaintiffs, of course, are not left without adequate remedy. We do not pass on the merits of any claim plaintiffs might have against the remaining defendants. In this regard, however, the basis for federal jurisdiction having been removed from the case and no other independent basis for federal jurisdiction appearing from the complaint, we are guided by the principles contained in *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966), recently restated by the Court of Appeals for this circuit in *Crane Co. v. American Standard, Inc.*, 603 F.2d 244, 253–54 (2d Cir. 1979):

> "Needless decisions of state law should be avoided as a matter of comity and to promote justice between the parties, by procuring a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well. Similarly, if it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals." *United Mine Workers v. Gibbs, supra*, 383 U.S. at 726–27, 86 S.Ct. at 1139 (footnotes omitted).

■ Accordingly, assuming the existence of power to hear the claims against the remaining defendants, we believe it a prop-er exercise of discretion to decline to exercise jurisdiction in these circumstances. See *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976); *Kiss v. Tamarac Utilities, Inc.*, 463 F.Supp. 951 (S.D.Fla. 1978). The federal defendants' motion for summary judgment is granted. The claims against the remaining defendants are dismissed without prejudice to further litigation in an appropriate State forum.

SO ORDERED.

---

**2.** It appears that no other incident involving the pipe system has ever occurred.