**Shirley CUMMISKEY, Plaintiff,**

v.

**CHANDRIS, S.A. and Ajax Navigation Co., Defendant.**

No. 87 Civ. 3319(IBC).

United States District Court, S.D. New York.

Aug. 17, 1989.

---

11. Subject, however, to compliance with the requirements of Fed.R.Civ.P. 65(c).

Tabak & Mellusi, New York City, for plaintiff; Ralph J. Mellusi, of counsel.

Martocci & Burns, New York City, for defendant; Howard W. Burns, Jr., of counsel.

## OPINION

### IRVING BEN COOPER, District Judge.

Defendants move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, contending there are no genuine issues of material fact for trial. Plaintiff opposes the motion. For the reasons set forth below, the motion of defendants is granted in its entirety.

## STATEMENT OF FACTS

Plaintiff Shirley Cummiskey commenced this personal injury action in New York State Supreme Court to recover damages for an injury incurred while a passenger on board defendants' vessel, the S/S BRITAN-IS. Defendant operator Chandris, S.A. and defendant vessel owner Ajax Navigation Co. subsequently removed the action to this Court on the basis of diversity jurisdiction.

The papers before us reveal the following. Plaintiff and her travelling companions, Eileen and Tara Donohue, boarded the S/S BRITANIS on the afternoon of July 6, 1982 for a five day cruise from New York to Bermuda. (Deposition of S. Cummiskey, sworn to September 6, 1984, pg. 14 (hereafter S. Cummiskey deposition)). The following day, the three women were walking through the ship's Dolphin Lounge (hereafter "the lounge") in order to reach the buffet lunch being served at the pool, (Id., pg. 19) located immediately behind the lounge (E. Donohue deposition, pgs. 27–28). The lounge area is rectangular in shape, with three doors in the forward end of the room and two in the rear which lead out into the pool area. (T. Donohue deposition, pgs. 16–18, E. Donohue deposition, pg. 29). The lounge floor is carpeted with the exception of a tile area bordering the front and sides of the bar. (Id., p. 19). The bar is located between the two rear doors. (T. Donohue deposition, pg. 23).

Plaintiff and her companions entered the lounge through the forward middle door, (E. Donohue deposition, pg. 29) and proceeded single file, with plaintiff leading, between the tables and chairs in the lounge, towards the bar. (T. Donohue deposition, pgs. 20–22). The lounge was crowded with passengers moving between the lounge and the pool area. (E. Donohue deposition, pg. 34). There were people in and around the bar and sitting on the bar stools. (S. Cummiskey deposition, pg. 20). When plaintiff reached a point directly in front of the bar, she turned left, stepping onto the tile portion of the floor. (T. Donohue deposition, pg. 24). As she did so, she slipped and fell to the floor, injuring her right ring finger and pinky.[1] (S. Cummiskey deposition, pgs. 21, 24). At the time of the accident, the vessel was riding "nice and smooth" (Deposition of E. Donohue, sworn to September 22, 1988, pg. 21 (hereafter E. Donohue deposition)), the lounge area well-lighted. (Deposition of T. Dono-

---

1. We note that in her deposition, plaintiff stated that the fingers of her right hand were injured (S. Cummiskey deposition, pg. 24). However, counsel for both parties indicate that plaintiff's injuries occurred to her left finger. (Plaintiff's affidavit in opposition to defendant's motion for summary judgment, dated February 15, 1989, pg. 5; Defendant's Rule 3(g) statement, dated January 13, 1989, pg. 1).

hue sworn to September 22, 1988, pg. 20 (hereafter T. Donohue deposition)).

Plaintiff stated she did not see anything on the floor prior to her fall. (S. Cummiskey deposition, pg. 34). Immediately following the accident, her companions observed that the tile floor where plaintiff fell and the adjacent rug were wet. (E. Donohue deposition, pg. 42, T. Donohue deposition, pg. 28). Plaintiff also noticed that the side of her leg was wet, but was unable to identify the nature of the sticky substance. (S. Cummiskey deposition, pg. 34). One of her companions stated that she noticed the rug was wet in different places on occasions prior to the plaintiff's fall. (*Id.*, p. 28).

After plaintiff's fall, an unidentified individual wearing a uniform assisted plaintiff to her feet. (E. Donohue deposition, pgs. 45–49). While assisting her, the uniformed person apologized, stating "I am really sorry the floor is wet. I'm sorry." (*Id.*, p. 49). In her deposition, Tara Donohue described the uniformed person as follows:

Q: Can you describe this person for me, this guy?

A: He was a foreigner. I don't know exactly what he was because they were all foreigners.

Q: Light skinned, dark skinned?

A: I don't know. Medium.

Q: Medium coloring?

A: Dark, probably.

Q: Which is it?

A: Dark. Not really dark. Medium.

Q: Medium dark?

A: Yes.

Q: What color was his hair; do you recall?

A: No, I don't.

Q: Do you recall what he was wearing?

A: A maroon jacket.

Q: Like a suit coat like I have on?

A: No. Like a uniform, a ship uniform. What everybody else was wearing.

Q: Maroon?

A: I think it was maroon.

Q: Did he have a tie on?

A: I don't remember.

Q: What color were his pants?

A: I don't remember.

Q: Were there any markings on his jacket?

A: I don't remember. (T. Donohue deposition, pgs. 30–31)

Ellen Donohue's description was similar:

Q: What did this person look like?

A: Foreign.

Q: What does that mean?

A: He had an accent and he was dark.

Q: Dark complexion?

A: Yes.

Q: What color was his hair?

A: I don't remember. Apparently it was black.

Q: How tall was he?

A: I don't know.

Q: What kind of accent did he have?

A: I don't know.

Q: Can you describe anything else about him?

A: He had a uniform on.

Q: What kind of uniform?

A: A red top and black pants, a red jacket.

Q: What kind of red top?

A: A red jacket.

Q: You mean like a suit coat?

A: Yes.

Q: What color shirt?

A: I think it was white.

Q: Did he have a tie on?

A: I don't remember.

Q: Was there any type of identification on his red jacket?

A: I don't remember. (E. Donohue deposition, pgs. 45–8).

Approximately fifteen minutes later a ship nurse arrived and took plaintiff to the ship's infirmary (S. Cummiskey deposition, pg. 25). The ship's physician, Dr. Constantin I. Plesa, treated plaintiff by cleaning and bandaging the open wound on her ring finger and by wrapping it in gauze and placing it in a splint. (*Id.*, p. 26). Plaintiff

alleges that she was in considerable pain throughout the day and night; she returned the next day to see Dr. Plesa for pain relief medicine. (*Id.*, p. 27).

When the ship pulled into port in Bermuda the day after the accident, plaintiff did not seek further medical assistance on shore, claiming that she was in too much pain to make such arrangements. (*Id.*, p. 28). Furthermore, plaintiff neither requested help from the ship to take her ashore for medical assistance nor did she request the ship personnel to make any arrangements for her to return to New York for treatment. (S. Cummiskey deposition, pg. 28). Plaintiff does concede, however, that Dr. Plesa "may have indicated to plaintiff that she seek treatment in Bermuda...." (Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, February 15, 1989, pg. 6).

## DISCUSSION

Federal Rule of Civil Procedure 56 states, in relevant part, that summary judgment shall be "rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of fact and that the moving party is entitled to judgment as a matter of law."

Despite the general reluctance of courts to grant summary judgment in negligence cases, the mere fact that this case involves a claim of negligence does not preclude granting of summary judgment. *Berry v. Atlantic Coast Line R.R.*, 273 F.2d 572, 582 (4th Cir.), *cert den*, 362 U.S. 976, 80 S.Ct. 1060, 4 L.Ed.2d 1011 (1960); *Haugen v. United States*, 492 F.Supp. 398, 400 (E.D.N.Y.), *aff'd without opinion*, 646 F.2d 560 (2d Cir.1980). In considering a motion for summary judgment, it is not the role of a court to resolve disputed issues of genuine fact but to assess whether there are any factual issues to be tried while drawing reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1985); *Knight v. United States Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986), *cert. den*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987); *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir.1985).

The Supreme Court has held that "in the face of the defendant's properly supported motion for summary judgment, the plaintiff [can]not rest on his allegations ... to get to a jury without 'any significant probative evidence tending to support the complaint.'" *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2511 (*quoting*, in part, from *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

For the purposes of the instant motion, we must resolve the following three issues: First, whether defendants had actual or constructive notice of wetness on the floor; second, whether the opinion of plaintiff's expert witness raises any genuine issue of fact in dispute; and finally, whether defendants may be held liable for the negligent conduct of the ship's physician. These issues are addressed in turn.

*Standard of Care: Notice of Wetness*

The first issue we address is whether plaintiff has presented sufficient evidence to indicate a factual dispute with regard to the alleged negligent failure of defendants to foresee and correct the wetness problem in the bar. The standard of care applied in cases involving maritime injuries is "reasonable care under the circumstances." *Monteleone v. Bahama Cruise Line, Inc.*, 838 F.2d 63, 64–65 (2d Cir.1988); *Rainey v. Paquet Cruises, Inc.*, 709 F.2d 169, 172 (2d Cir.1983); *see also Kermarec v. Compagnie Generale*, 358 U.S. 625, 631, 79 S.Ct. 406, 410, 3 L.Ed.2d 550 (1959). The degree of reasonable care necessary on the ship is determined by the extent to which the circumstances surrounding the particular maritime travel in question are different from those encountered in daily life. *Rainey*, 709 F.2d at 172. In this case, the conduct of the defendants is measured against a standard of ordinary reasonable care because the presence of wetness on the tile in the bar is a

condition in no way peculiar to maritime travel. *Id.*

We also bear in mind that a vessel is not the insurer of the safety of the passengers. *Moore v. American Scantic Line, Inc.*, 121 F.2d 767 (2d Cir.1941). Consequently, the fact that an accident occurs on the ship is not, per se, evidence of negligence. Hence, there must be a showing of facts from which negligence may be inferred. *Mehra v. Bentz*, 529 F.2d 1137, 1138 (2d Cir.1975), *cert. den*, 426 U.S. 922, 96 S.Ct. 2628, 49 L.Ed.2d 375 (1976).

In holding defendants responsible for a defective condition upon the ship, it is essential for plaintiff to demonstrate that defendants had actual or constructive notice of the wetness before the accident occurred. *Id.; Demgard v. United States*, 94 F.Supp. 309, 311 (S.D.N.Y.1950); *Dann v. Compagnie Generale Transatlantique*, 45 F.Supp. 225, 226 (E.D.N.Y.1942).

■ Plaintiff contends that defendants had both actual and constructive notice of the wetness. The claimed actual notice came from the unidentified uniformed person (presumed by both parties to be a crew member) who came to plaintiff's assistance. (E. Donohue deposition at 49, T. Donohue deposition at 31). The question of whether the hearsay statement of this unidentified person constitutes admissible evidence of actual notice must initially be decided by this court. Fed.R.Evid. 104(a); *United States v. Bell*, 500 F.2d 1287, 1290 (2d Cir.1974) (preliminary questions concerning admissability of evidence shall be determined by the court, not by the jury). Federal Rule of Evidence 804(a)(2) sets forth the exception to the hearsay rule where the declarant is unavailable. The rule states, in relevant part, that the evidence may be permitted if the declarant is "absent from the hearing and the proponent of his statement has been unable to procure his attendance by process or other reasonable means." Our review of the papers before us fails to reveal any effort by plaintiff to ascertain the identity of this person. Thus

plaintiff, the party offering the statement, has not met her foundational burden of establishing the unavailability of the declarant. *United States v. Pelton*, 578 F.2d 701, 709 (8th Cir.), *cert. den*, 439 U.S. 964, 99 S.Ct. 451, 58 L.Ed.2d 422 (1978).

■ Furthermore, even if we were to find that plaintiff had sufficiently satisfied her burden of proving that the declarant was unavailable, we would nevertheless need to overcome another hurdle in admitting this statement into evidence. Since the statement is clearly hearsay, plaintiff would have to establish that an exception to the hearsay rule applied, thus permitting the introduction of the statement into evidence. The most likely basis for admitting the unidentified declarant's statement into evidence would be the excited utterance exception to the hearsay rule.[2] The declarant of an excited utterance must personally observe the startling event. *McLaughlin v. Vinzant*, 522 F.2d 448, 451 (1st Cir.), *cert. den*, 423 U.S. 1037, 96 S.Ct. 573, 46 L.Ed.2d 412, *reh. den*, 423 U.S. 1092, 96 S.Ct. 890, 47 L.Ed.2d 105 (1976). In a case where the witness is both unidentified and unavailable, the burden is greater. The burden of establishing perception is on the proponent of the evidence. *David v. Pueblo Supermarkets of St. Thomas, Inc.*, 740 F.2d 230, 235 (3d Cir.1984). Although direct proof of perception is not necessary, the circumstantial evidence must be such that the purpose of the exceptions to the hearsay rule will not be defeated. "When there is no evidence of personal perception, apart from the declaration itself, courts have hesitated to allow the excited utterance to stand alone as evidence of the declarant's opportunity to observe." *Miller v. Keating*, 754 F.2d 507, 511 (3d Cir. 1984) (*Citing Garret v. Howdan*, 73 N.M. 307, 387 P.2d 874, 876–78 (1963)). Our review of the record in this case reveals that there is no evidence that would allow us to infer that the unidentified person actually observed either the wetness or the accident. Plaintiff and her witnesses stat-

---

**2.** Rule 803(2) describes excited utterance as "a statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Fed.R.Evid.

ed that they did not know whether this person was present before the fall. The specific words of the declarant, interpreted in various ways by plaintiff and her companions, do not offer any indication that the declarant knew anything more than that plaintiff had fallen and that she was wet. Therefore, we conclude that defendants had no actual notice of the wetness.

■ The claimed constructive notice is derived from the statement of plaintiff's companion who testified that "[t]he rug was wet....The rug was always wet." (T. Donohue deposition at 27). However, plaintiff slipped on the tile, not the rug. The fact that Tara Donohue may have observed wet spots on the rug the day prior to the accident does not create any inference that defendants had constructive notice of wetness on the tile. Lacking such evidence, any effort by plaintiff to demonstrate that the pool drippings or drink spillage was a chronic problem resulting in constructive notice would be pure speculation.

It is possible that plaintiff anticipates that more evidence regarding the uncertain origin of the wetness will develop at trial. But the mere hope that a question of fact may arise at trial is not sufficient to defeat a motion for summary judgment. *United States v. Potamkin Cadillac Corp.*, 689 F.2d 379, 381 (2d Cir.1982). Plaintiff cites *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438 (2d Cir.1980), for the proposition that summary judgment is inappropriate where the non-moving party comes forth with evidence obtained through discovery that demonstrates uncertainty as to a material fact. However, *Quinn* holds that the nonmoving party cannot rest on conclusory allegations in order to obtain a trial, but rather the opposing party "must bring to the district court's attention some affirmative indication that his version of relevant events was not fanciful." *Id.* at 445. Once the party moving for summary judgment has met its burden of demonstrating that no issues of fact are

in dispute, "mere conjecture or speculation by the party resisting summary judgment does not provide a basis upon which to deny the motion." *Quarles v. General Motors Corp. (Motors Holding Div.)*, 758 F.2d 839, 840 (2d Cir.1985); *see also, Matsushita Elec. Industrial Co. v. Zenith Radio*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986) ("When the moving party has carried its burden ...its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."); *Miller v. New York Produce Exch.*, 550 F.2d 762, 767 (2d Cir.), *cert. den*, 434 U.S. 823, 98 S.Ct. 68, 54 L.Ed.2d 80 (1977) ("Suspicion, conjecture and speculation are not enough.... The purported fact issue must be actual rather than theoretical, real rather than imaginary."). Plaintiff has thus failed to produce any evidence to demonstrate a genuine factual dispute with respect to the defendant's constructive or actual notice of the wetness.

*Use of Expert Testimony to Defeat Summary Judgment Motion*

The second issue we must address is whether the opinion of plaintiff's expert, Mr. Daniel Rhodes, raises any issues of factual dispute. In the case at hand, plaintiff's expert offers three assessments of the accident's cause: first, that defendants used an unsuitable glazed ceramic tile material in the bar area, allegedly a dangerous situation exacerbated by the tile's irregular surface which is known to hinder effective cleaning; second, that defendants were negligent in arranging the lounge furniture in such a manner that it forced plaintiff to walk towards the bar; and third, that defendants were negligent in not providing adequate supervisory personnel to monitor traffic flow in the lounge area during crowded time periods.[3]

Rule 703 permits the use of expert testimony as long as it is based on information of a type reasonably relied upon by experts in the same field. In addition, however, our Circuit Court requires a more restrictive examination by the trial court into the

---

3. Mr. Rhodes bases his oral opinion on the depositions, photographs of the lounge area, a general arrangement drawing of the vessel and plaintiff's answers to defendants' interrogatories. (Affidavit of Daniel Rhodes, sworn to March 7, 1989 (hereafter Rhodes affidavit)).

basis on which the expert opinion is formed. For example, the court in *In re Agent Orange*, a case which excluded expert medical testimony, noted the trial judge's discretion to exclude expert testimony if the underlying data is untrustworthy or hearsay or for other reasons. *In re Agent Orange*, 611 F.Supp. 1223, 1244 (E.D.N.Y.1985) (*citing Shatkin v. McDonnell Douglas Corp.*, 727 F.2d 202 (2d Cir.1984) (the trial judge has "the discretionary right under Fed.R.Evid. 703 to determine whether the expert acted reasonably in making assumptions of fact upon which he would base his testimony.") *Id.* at 208).

In determining whether the expert's conclusions are trustworthy or reasonable, we bear in mind that although the purpose of Rule 703 was to expand the bases of expert opinion, a court does not abdicate its responsibility to examine the facts upon which the expressed opinions are made. The rule "was not intended to make summary judgment impossible whenever a party has produced an expert to support its position." *Merit Motors, Inc. v. Chrysler Corp.*, 569 F.2d 666, 673 (D.C.Cir.1977). As the court in *Merit Motors* indicated, Rule 703 does not preclude the granting of summary judgment against a party who relies solely on an expert's opinion which has no other basis than theoretical speculations. *Id.* at 673; *see also United States v. Various Slot Machs. on Guam*, 658 F.2d 697 (9th Cir.1981) (expert must back up his opinion with specific facts, not mere assertions without factual basis that certain slot machines were not gambling machines). Furthermore, an expert must not only state his opinions but explain how he came to those conclusions. *DiRose v. PK Management Corp.*, 691 F.2d 628, 631 (2d Cir. 1982), *cert. den*, 461 U.S. 915, 103 S.Ct. 1896, 77 L.Ed.2d 285 (1983) (expert witness must adequately explain and support his appraisals since "[a]djustments which rest upon conclusory and subjective opinions will not suffice.... They cannot be 'something that he dreamed up.' "). *Id.* at 632.

Mr. Rhodes does not explain how he came to his conclusions with respect to the composition of the tile or the cleaning procedures of the ship. There is no evidence as to the composition of the tile or the arrangement of the ship's furniture in plaintiff's answers to defendants' interrogatories or in the depositions. In addition, it is not clear from the photograph submitted to the court or from a general arrangement drawing (not submitted to the court), how Mr. Rhodes could have determined the tile's composition. While we realize it was not necessary for Mr. Rhodes to have personally inspected the BRITANIS, we nevertheless believe that at some point during the many years of discovery in this case, plaintiff could have definitively resolved this question by either requesting a sample of the tile or a stipulation as to its composition from defendants. As to the expert's assertion that the tile was prone to waxy buildup, again neither plaintiff nor her expert have presented any evidence establishing what type of cleaning products or methods were employed by defendants.

In addition to his assertion that the tile which covered the bar area was unsuitable, Mr. Rhodes claims that the furniture in the lounge was arranged in such a way as to force plaintiff and her companions to walk directly towards the bar area. This conclusion is not in accord with the facts. Plaintiff's companion, Tara Donohue, stated that plaintiff could have passed through the lounge by walking up the side aisles of the room.[4] It was plaintiff who chose to walk down the center aisle and to "[s]queeze through all the people at the bar and everything else." (T. Donohue deposition, pg. 24) Consequently, Mr. Rhodes' opinion that the arrangement of the chairs and tables required passengers to negotiate around a column and waiters working at the bar is not supported by the record before us.

Similarly, Mr. Rhodes' opinion that defendants should have provided supervisory

---

**4.** "You walk in the door. I am walking in the door. There is an aisle in the middle. You could either walk left or right. But she walked down the middle first and then you got to go this way (indicating), like a turn. (T. Donohue deposition, pg. 22)

personnel to monitor traffic flow is again not consistent with the stated facts. Plaintiff's witness stated that she had passed through the lounge area on many occasions without mishap.[5] Furthermore, since Mr. Rhodes has conceded that he has no firsthand knowledge of the ship's supervisory practices, it is not clear how he came to the conclusion that no supervision existed. Since there is simply no evidence presented to support these opinions, we must conclude that Mr. Rhodes' judgment is based on speculation and not fact. *See, e.g., Scheel v. Conboy,* 551 F.2d 41, 43 (4th Cir.1977) (economist's projections of plaintiff's future earnings based on pure speculation not supported by record). As the court in *In re Agent Orange* concluded:

> Although summary judgment is a drastic procedural device, courts in the Second and other Circuits follow the edicts of Rule 56(e) and do not allow mere conclusory allegations that a factual dispute exists to defeat a motion for summary judgment. This general prohibition extends to the use of conclusory allegations by experts. *Id.* at 1259.

Thus, the use of unreliable and unfounded expert testimony in this case is insufficient to defeat defendants' motion. Merely stating the opinion that the tiles were defective, the traffic monitored incorrectly or the furniture arrangement somehow improper with no supporting facts to sustain these conclusions does not create a factual dispute for the jury.

*Negligence of Physician*

The final issue for our consideration is whether the alleged negligence of Dr. Plesa, the ship's physician can be imputed to defendants. Defendants assert that maritime law uniformly holds that a shipowner is not vicariously liable for the negligent acts of a shipboard physician in the performance of his medical practice, because the duty a shipowner is limited to the exercise of reasonable care in selecting a competent and duly qualified physician. De-

fendants maintain that plaintiff has failed to meet her burden of demonstrating that defendants failed to exercise reasonable care in the selection and hiring of Dr. Plesa.

Plaintiff claims that there is evidence from which a jury may reasonably conclude that Dr. Plesa was negligent in failing to schedule followup care of the plaintiff aboard ship, and in failing to make arrangements for her to receive treatment ashore. Plaintiff urges the court to disregard general maritime common law in order to achieve an appropriate practical result by holding defendants vicariously liable for the allegedly negligent acts of Dr. Plesa since he is a regular salaried member of the ship's crew.

The relevant maritime law holds that negligent treatment by a physician employed by a ship for the convenience of the passengers cannot be imputed to the carrier, and that a ship's duty is limited to the use of reasonable care in hiring a competent physician. *Amdur v. Zim Israel Navigation Co.,* 310 F.Supp. 1033 (S.D.N.Y. 1969); *Barbetta v. S/S Bermuda Star,* 848 F.2d 1364 (5th Cir.1988); *Cimini v. Italia Crociere International S.P.A.,* 1981 A.M.C. 2674 (S.D.N.Y.1981); *Di Bonaventure v. Home Lines, Inc.,* 536 F.Supp. 100 (E.D.Pa.1982); *The Korea Maru,* 254 F. 397 (9th Cir.1918); *see also* M. Norris, The Law of Maritime Personal Injuries § 39 (3d ed. 1975 and Cumulative Supplement issued March 1989).

Plaintiff cites the decision in *Nietes v. American President Lines, Ltd.,* 188 F.Supp. 219 (N.D.Cal.1959), for the proposition that a shipowner may be liable for the negligent act of a ship physician where that individual is a regular salaried member of the ship's crew. However, that decision has been strongly criticized by courts considering similar claims. *See Barbetta,* 848 F.2d at 1371; *Di Bonaventure,* 536 F.Supp. at 103; *Amdur,* 310 F.Supp. at 1042-43.

---

**5.** Q: How many times did you go through the lounge to the pool the first day you were aboard the ship?
A: About ten, at least.

Q: You did not have any accidents, did you, on that first day?
A: No, I didn't. (T. Donohue deposition, pg. 13)

Thus, the sole question is whether defendants exercised the necessary standard of care in hiring Dr. Plesa. In employing a physician, the shipowner has only the duty to use reasonable care and diligence in determining the qualifications of the applicant. *Amdur,* 310 F.Supp. at 1042. As stated in *Amdur,* "this duty is sufficiently fulfilled when the physician's fitness is diligently inquired into; proper evidence of his treatment does not prove that he was incompetent or that the company was negligent in hiring him." *Id.*

Defendants have presented evidence in support of their position that reasonable care was used in hiring Dr. Plesa, including his medical diploma and subsequent medical licenses from Greece. In addition, the affidavit of Vasilios D. Kapetanakos, Vice President of Chandris, Inc., stated that the hiring of Dr. Plesa included an initial interview, the review and verification of his credentials, and subsequently a second interview. (Affidavit of Vasilios D. Kapetanakos, January 13, 1989, pgs. 1–4).

The question of whether defendants negligently hired an incompetent doctor is an issue of fact generally decided by the jury. *Barbetta,* 848 F.2d at 1368. However, plaintiff has not challenged the practices of defendants in the selection or hiring of Dr. Plesa, or asserted that his alleged incompetency was known to defendants or could have been ascertained. *The Korea Maru,* 254 F. at 399. Since plaintiff has not even raised the issue of whether defendants negligently employed the ship physician, the issue is not in dispute. Consequently, since there is no question of fact in dispute on this issue, summary judgment is appropriate.

### CONCLUSION

We conclude that there are no genuine issues of material fact to permit this case to proceed to trial. Plaintiff has utterly failed to present any admissible evidence, from witnesses including experts, or from other sources to the contrary. Accordingly, we are constrained to, and do, grant defendants' motion for summary judgment in its entirety.

SO ORDERED.