Sandra JACKSON, individually and on behalf of her deceased husband, Ronnie Lee Jackson, and on behalf of her minor children, Ashlee Jackson, Aric Jackson, and Austin Jackson, Plaintiffs,

v.

CARNIVAL CRUISE LINES, INC., Craig Lunn, and Joyce Boyd–Little, Defendant.

No. 99–1813–CIV.

United States District Court, S.D. Florida.

May 21, 2002.

Plaintiff's Appendix to BKC's Motion for Summary Judgment.

John Henry Schulte, Schulte & Bisbing, Miami, FL, Timothy J. Young, Young Richaud & Myers, New Orleans, LA, for Sandra Jackson, individually and on behalf of her deceased husband, Ronnie Lee Jackson and on behalf of her minor children, Ashlee Jackson, Aric Jackson and Austin Jackson, plaintiffs.

Jeffrey Bradford Maltzman, Darren Wayne Friedman, Kaye Rose & Maltzman, Miami, FL, Christopher Edson Knight, Edward Joy Briscoe, Fowler White Burnett Hurley, Banick & Strickroot, Miami, FL, for Carnival Cruise Lines, Inc., Craig Lunn, Joyce Boyd–Little, defendants.

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

GOLD, District Judge.

THIS CAUSE is before the court upon the motion for summary judgment filed by defendant Carnival Cruise Lines ("Carnival") (DE #103). The plaintiff, Sandra Jackson, has brought suit on behalf of her deceased husband and minor children against Carnival, Dr. Craig Lunn ("Dr. Lunn"), and Nurse Joyce Boyd–Little ("Nurse Boyd–Little"). This case arises from the death of the plaintiff's husband shortly after the family's disembarkation from a Carnival cruise aboard the M/V Tropicale. In the counts that remain from her second amended complaint, the plaintiff alleges the following claims: count I, negligence (against Carnival and Nurse Boyd–Little); count II, breach of contract of carriage (against Carnival); and count IV, failure to warn (against Carnival)[1]. The court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties, and the amount in dispute exceeds $75,000. The court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1333 insofar as this matter involves claims that come under this court's admiralty jurisdiction.

Carnival requests that the court enter summary judgment in its favor on counts I, II, and IV of the second amended complaint under Federal Rule of Civil Procedure 56. The court heard oral argument on this motion on May 17, 2002. Upon consideration of the parties' arguments, the applicable case law, and the evidence that has been submitted, the court has determined that Carnival's motion for summary judgment shall be granted.

### The Undisputed Facts [2]

### I. Mr. Jackson's Illness and Subsequent Demise

In 1998, the plaintiff; her husband, Ronnie Lee Jackson ("Jackson"); and their

---

1. On May 31, 2001, the court entered an order granting in part and denying in part Carnival's motion to dismiss the second amended complaint for failure to state a claim. As a result of this motion, the court dismissed count III of the complaint, which was for third party beneficiary liability, and the allegations under count I that sought to hold Carnival vicariously liable for Dr. Lunn's and Nurse Boyd–Little's conduct. The court also granted Dr. Lunn's motion to dismiss due to insufficient service of process.

2. Pursuant to Southern District of Florida Local Rule 7.5, Carnival, as the party moving for summary judgment, should have submitted "a concise statement of material facts as to which [it] contends there is no genuine issue to be tried". Under the same rule, the plaintiff, as the party opposing summary judgment, should have filed "a single concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried". Neither party complied with the Local Rule when it filed its brief with the court. As a result, the court undertook an independent evaluation of the entire record in order to extract the undisputed facts. The relevant facts laid out below are derived from the previous order on the defendants' motions to dismiss and are not disputed by the record. The court also has included some facts from the evidence submitted by the parties pursuant to the instant motion.

children, Ashlee Jackson, Aric Jackson, and Austin Jackson, purchased passenger tickets for travel aboard the M/V Tropicale, a Carnival cruise ship. They began their voyage aboard the M/V Tropicale sometime in June of 1998.

On June 28, 1998, Mr. Jackson became ill while traveling on the cruise ship. The plaintiff immediately sought assistance for her husband from a purser employed by Carnival. The purser advised the plaintiff that he would arrange for the ship's infirmary to provide assistance for Jackson. Early in the evening of June 28, 1998, the plaintiff discussed her husband's medical condition with Nurse Boyd–Little, who was working aboard the M/V Tropicale. Nurse Boyd–Little informed the plaintiff that the vessel's physician would not visit Jackson in his cabin, and the plaintiff would have to take her husband to the infirmary for treatment. Due to his illness, however, Jackson could not leave his cabin on the evening of June 28, 1998. It is important to note that Carnival does not have a written policy outlining treatment of patients in their cabins. The decision about where to treat patients is left to the individual physicians and nurses. *See* Def. Ex. A at 128.[3]

At approximately 5:00 a.m., on June 29, 1998, Jackson awoke feeling extremely ill. In response to the plaintiff's phone call, two Carnival employees arrived at Jackson's cabin to take him to the infirmary. Dr. Lunn treated Jackson briefly at the ship's infirmary. When the ship docked in Tampa, Florida, later that day, Jackson was transported from the vessel to Tampa General Hospital aboard an ambulance. Carnival did not provide the plaintiff and her children with any off-shore assistance

or transportation to the hospital. Jackson was pronounced dead at approximately 9:00 a.m., on June 29, 1998, at Tampa General Hospital.

## II. Dr. Lunn's and Nurse Boyd–Little's Employment

Dr. Lunn and Nurse Boyd–Little were hired as independent contractors by Carnival to work aboard Carnival's cruise ships. During the time of the plaintiff's voyage, Dr. Lunn and Nurse Boyd–Little were employed as a doctor and nurse, respectively, aboard the M/V Tropicale. Prior to hiring these defendants, Carnival conducted an extensive investigation of their backgrounds and credentials. Steve Williams, Carnival's Director of Medical Operations, testified that Carnival ensures that individuals hired as doctors and nurses are properly investigated and qualified for their positions. *See* Def. Ex. A at 124. Karen Adair, who assists Williams in investigating and credentialing medical staff prior to their employment with Carnival, testified to the same effect. *See* Def. Ex. B at 68–69. Although Williams did not investigate Dr. Lunn's and Nurse Boyd–Little's backgrounds at the time they were hired, he stated that his predecessor conducted this investigation to assure that Dr. Lunn and Nurse Boyd–Little had the appropriate degrees, training, and licenses. *See* Def. Ex. A at 126. From his review of the relevant documents, Williams concluded that Dr. Lunn and Nurse Boyd–Little were fully-licensed practitioners at the time of the incident. *See* Def. Ex. A at 125.

Williams also testified that Carnival requires all members of its medical staff to acknowledge in writing that they have received and reviewed all policies and train-

---

**3.** In support of each of their positions, the parties have submitted excerpts from Dr. Lunn's and Nurse Boyd–Little's employment files and from the depositions of Steve Williams, Karen Adair, Dr. Arthur Diskin, and Dr. Umberto Orazi. Additionally, Carnival has submitted the affidavit of Cristina Rubio, and the plaintiff has submitted the affidavit of Peter Fisher.

ing documents. The personnel files of Dr. Lunn and Nurse Boyd–Little indicate that they were trained in these policies. None of this training material concerns medical treatment; it only addresses administrative matters. Williams added that decisions concerning medical treatment are left to the discretion of the medical staff aboard the vessel. *See* Ex. A at 128.

Dr. Arthur Diskin, Chairman of the Department of Emergency Medicine at Mount Sinai Medical Center, is employed by Carnival to review the resumes and credentials of all physicians and most nurses to determine their qualifications for employment by Carnival. Dr. Diskin testified that he personally reviewed the credentials of Dr. Lunn and initialed his personnel file to indicate his approval of Dr. Lunn. *See* Def. Ex. C at 39–40, 66–67.

Dr. Umberto Orazi, Carnival's expert witness, was a ship's doctor for Princess Cruises for twelve years prior to joining the Cleveland Clinic Florida in 1997 and private practice in 2000. Dr. Orazi reviewed Dr. Lunn's and Nurse Boyd–Little's employment records and Carnival's hiring procedure. According to Dr. Orazi's expert report, "Dr. Lunn possessed excellent qualifications for his position as a ship's doctor", including active medical licenses in South Africa, United Kingdom, and Australia; certification in Advanced Cardiac Life Support; and eleven years of general practice in anesthesia, obstetrics/gynecology, and surgery. Dr. Orazi concluded that Carnival "conducted a thorough check of Dr. Lunn's credentials during the hiring process". *See* Def. Ex. F. As for Nurse Boyd–Little, Dr. Orazi concluded that, having served as a ship's nurse since 1986, she was a veteran seafarer. Her letters of recommendation from former employers spoke very highly of her, and she was certified in basic life support and Advanced Cardiac Life Support. Dr. Orazi echoed the conclusions of

Dr. Diskin, Williams, and Adair, that both Dr. Lunn and Nurse Boyd–Little were qualified for the positions they held aboard the Tropicale.

The plaintiff has not introduced any evidence to rebut the testimony of these witnesses. Rather than discredit Dr. Lunn's and Nurse Boyd–Little's qualifications, the plaintiff has relied on missing information from Dr. Lunn's files to challenge his employment by Carnival. That is, the plaintiff has demonstrated that numerous documents are incomplete or missing from Dr. Lunn's personnel file. These documents are:

1. Ship's Physician Delineation Form: This form shows the physician's degree of experience. *See* Pl.Ex. A at 64.

2. Independent Contractor Agreement

3. Signed Indemnity Agreement

4. Ship's Physician Checklist No. 1 Familiarization with Medical Department

5. Copy of Introductory Letter from Dr. Diskin: This letter explains the role of Dr. Lunn on the Carnival vessel. *See* Pl.Ex. A at 49–52.

6. Fully Notarized Credentialing Affidavit

The plaintiff has not introduced any evidence regarding Nurse Boyd–Little's employment, nor has she attempted to argue that her employment record is incomplete.

### III. The Ticket Contract

Carnival has not submitted the ticket contract executed by the parties as evidence in this case. Instead, it relies on a ticket issued to another passenger but identical in all respects to the one issued to the plaintiff and her family prior to their voyage in June of 1998. *See* Rubio Affid. The ticket contract states:

If the Vessel carries a physician, nurse, masseuse, barber, hair dresser or mani-

curist, it is done solely for the convenience of the guest and any such person in dealing with the guest is not and shall not be considered in any respect whatsoever, as the employee, servant or agent of the Carrier and the Carrier shall not be liable for any act or omission of such person or those under his order or assisting him with respect to treatment, advice of care of any kind given to any guest.

*See* Def. Ex. G at ¶ 6. No passenger can board a Carnival vessel without presenting a valid contract ticket, and the plaintiff has not shown that neither she nor her family were not presented with a ticket containing this language.

### *Summary Judgment Standard*

Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment where the pleadings and supporting materials show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The court's focus in reviewing a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Allen v. Tyson Foods, Inc.,* 121 F.3d 642, 646 (11th Cir. Sept. 1997). The moving party has the burden to establish the absence of a genuine issue as to any material fact. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142(1970); *Tyson Foods, Inc.,* 121 F.3d at 646. Once the moving party has established the absence of a genuine issue of material fact, to which the nonmoving party bears the burden at trial, it is up to the nonmoving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Celotex v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Issues of fact are genuine only if a reasonable jury, considering the evidence presented could find for the nonmoving party. *See Anderson,* 477 U.S. at 247–51, 106 S.Ct. at 2510–11. In determining whether to grant summary judgment, the district court must remember that, "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* 477 U.S. at 255, 106 S.Ct. at 2513.

### *Analysis*

### I. Applicable Law

■ The analysis of Carnival's motion for summary judgment is governed by federal admiralty law because this case involves maritime torts. *See Everett v. Carnival Cruise Lines,* 912 F.2d 1355, 1358 (11th Cir.1990). Even when, as here, the parties allege diversity of citizenship as a basis of subject matter jurisdiction, if admiralty jurisdiction also exists, federal maritime law governs the substantive issues in the case. *See id.* When neither a uniform statutory or judicially-created maritime rule provides an answer to a specific legal question, a court may apply state law, as long as application of the state law does not frustrate national interest in having uniformity in admiralty law. *See Coastal Fuels Mktg., Inc. v. Florida Express Shipping Co.,* 207 F.3d 1247, 1251 (11th Cir.2000). The court has examined the parties' arguments under the applicable law and standard of review. For the reasons discussed below, it has determined that Carnival's motion should be granted.

### II. Negligence

#### A. Negligent Selection, Hiring, Training, and Supervision

Count I of the plaintiff's complaint is for negligence. In its previous order on Car-

nival's motion to dismiss, the court struck the allegations relating to vicarious liability but held that the claims relating to negligent selection, hiring, training, and supervision survived the motion to dismiss. In subsections one and two of count I, the plaintiff alleges that Carnival was negligent in "[f]ailing to exercise reasonable care in the selection and hiring of a ship board physician and medical staff, namely Craig Lunn and Joyce Boyd" and "[f]ailing to select a competent and duly qualified physician and medical staff, namely Craig Lunn and Joyce Boyd".2d Am. Compl. at 5.

■ Under general maritime law, a shipowner who elects to provide a physician for its passengers has a duty to use reasonable care in selecting competent medical staff. *See Doe v. Celebrity Cruises*, 145 F.Supp.2d 1337, 1345 (S.D.Fla. 2001) (citing *Warren v. Ajax Navig. Corp. of Monrovia*, No. 91–230, 1995 WL 688421, *4 (S.D.Fla. Feb. 3, 1995)); *see also Barbetta v. S.S. Bermuda Star*, 848 F.2d 1364 (5th Cir.1988). "[T]his duty is sufficiently fulfilled when the physician's fitness is diligently inquired into; proper evidence of his treatment does not prove that he was incompetent or that the company was negligent in hiring him." *Cummiskey v. Chandris*, 719 F.Supp. 1183 (S.D.N.Y.1989) (citation omitted). As the Fifth Circuit explained in *Barbetta*:

> When a carrier undertakes to employ a doctor aboard a ship for its passengers' convenience, the carrier has a duty to employ a doctor who is competent and duly qualified. If the carrier breaches its duty, it is responsible for its own negligence. If the doctor is negligent in treating a passenger, however, that negligence will not be imputed to the carrier.

*Id.* at 1369 (citing cases from other jurisdictions discussing rule).

■ Carnival has presented sufficient evidence in support of its position that it exercised reasonable care in hiring, training, and retaining the individual defendants. In support of its motion for summary judgment, Carnival has presented the testimony of Steve Williams, Karen Adair, Dr. Arthur Diskin, and Dr. Umberto Orazi. All of these witnesses have stated that Dr. Lunn and Nurse Boyd–Little were qualified to perform their jobs, and their testimony is supported by the record. Carnival has submitted documents establishing that Dr. Lunn maintained active medical licenses in South Africa, the United Kingdom, and Australia; was certified in Advanced Cardiac Life Support; and had eleven years of general practice in anesthesia, obstetrics/gynecology, and surgery. Nurse Boyd–Little has been a ship's nurse since 1986, was certified in basic life support and Advanced Cardiac Life Support, and had positive evaluations from her employers. Additionally, Williams and Adair testified about the extensive procedure employed by Carnival to ensure that its doctors and nurses are properly investigated, qualified, and trained. *See* Def. Ex. A at 124; Def. Ex. B at 68–69. In light of this evidence, it must be concluded that Carnival has fulfilled its duty of exercising reasonable care in selecting the individual defendants as members of its medical staff. *See Hilliard v. Kloster Cruise, Ltd.*, No. 89–836–N, 1990 WL 269897 (E.D.Va. Oct.17, 1990) (finding that plaintiff failed to establish cruise line's negligent hiring of ship's doctor where he failed to produce evidence about cruise line's hiring practices or about cruise line's hiring of physician); *Cummiskey*, 719 F.Supp. at 1191 (granting cruise line's motion for summary judgment where evidence of ship's physician's qualifications and cruise line's hiring practices established that physician was qualified for job); *cf. Di Bonaventure v. Home Lines, Inc.*,

536 F.Supp. 100, 103 (E.D.Pa.1982) ("The fact that the physician errs in his treatment does not prove that he was incompetent or that the company was negligent in appointing him.") (citation omitted).

The plaintiff has not submitted any evidence to refute Carnival's evidence regarding the individual defendants' qualifications. Rather than attempting to discredit Carnival's hiring and training of Dr. Lunn and Nurse Boyd–Little, the plaintiff relies only on the fact that certain documents were missing from Dr. Lunn's personnel file to establish Carnival's negligence. That is, the plaintiff contends that Dr. Lunn was not qualified to work for Carnival nor properly trained because he did not execute all of the requisite employment documents.[4]

■ The plaintiff's argument is without merit because the missing documents are not relevant to the allegations of the plaintiff's complaint. The record establishes that the documents that are missing from Lunn's files are administrative in nature. Their absence does not indicate that Dr. Lunn was not qualified to perform the job function for which he was hired. In fact, all of the evidence establishing Dr. Lunn's academic and professional qualifications and work experience are contained in his file.

The missing documents are a delineation form, an independent contractor agreement, an indemnity agreement, a checklist relating to the medical department, an introductory letter, and a credentializing affidavit. The plaintiff has not explained, nor can the court understand, how these documents undermine Carnival's evidence regarding Dr. Lunn's qualifications. At most, the missing documents establish that Carnival was negligent in carrying out the administrative aspect of Dr. Lunn's hiring, but the plaintiff has not argued that this type of negligence resulted in the harm complained of by the plaintiff. It is a fundamental principle of tort law that proximate causation is a necessary element of any negligence claim, *see Mc Cain v. Fla. Power Corp.,* 593 So.2d 500 (Fla.1992), yet it cannot be argued in this case that Carnival's failure to execute the missing documents resulted in the death of the plaintiff's husband. The result would be different, for example, if the plaintiff could show that one of the missing documents instructed all medical personnel to treat sick passengers in their cabins and that Dr. Lunn failed to follow this procedure because he did not read that document. If this were true, Carnival's failure to provide Dr. Lunn with these instructions may have been a proximate cause of Jackson's demise. As discussed below, however, Carnival did not have such a policy.

Even if the plaintiff is correct that the missing introductory letter discussed Dr. Lunn's responsibilities and job duties aboard Carnival's vessel, the plaintiff cannot explain how this fact is relevant to her case. The only acts of negligence by Dr. Lunn about which the plaintiff complains are his failure to treat her husband in her cabin and his failure to disembark her husband by helicopter. Providing Dr. Lunn with the introductory letter would not have changed his decision not to treat Jackson in his cabin or to disembark him more swiftly from the vessel because that letter did not discuss where passengers were to be treated. For this reason, the missing documents are immaterial to the plaintiff's claims against Carnival.

In opposition to Carnival's motion, the plaintiff argues, "Neither Boyd nor Lunn been [sic] deposed at this time. It is

---

4. The plaintiff does not argue that any documents were missing from Nurse Boyd–Little's employment files, nor does she otherwise attempt to undermine her qualifications, training, or supervision by Carnival.

entirely possible that Boyd and/or Lunn will argue that Carnival did not properly advise either of them that they could provide medical treatment to the passengers in their cabins." Pl. Memo. at 5. This statement does not help the plaintiff's position because it was her burden to produce evidence, such as testimony from Dr. Lunn and Nurse Boyd–Little, in order to refute Carnival's case, but she has failed to do so. *See Barbetta v. S/S Bermuda Star*, 848 F.2d 1364, 1373–74 (5th Cir.1988) ("[I]t is . . . axiomatic that a plaintiff cannot defeat a motion for summary judgment simply by asserting that undiscovered information might exist somewhere which would create a genuine issue of material fact on an element of the plaintiff's claim.") (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

The plaintiff also relies on a statement in the order on Carnival's motion for summary judgment, where the court stated that whether Carnival breached its duty of reasonable care is a question of fact that should be determined by a jury. *See* Order at 6. The problem with the plaintiff's position is that it assumes that there are genuine issues of material fact that require resolution by a jury, but, as discussed above, the plaintiff has failed to produce any evidence to contradict Carnival's evidence regarding Dr. Lunn's and Nurse Boyd–Little's qualifications, and the missing documents are not "material" to this case. Because the plaintiff has not refuted Carnival's case, no material issues are in dispute for a jury to decide. *See Barbetta*, 848 F.2d at 1373 (finding that plaintiffs did not raise genuine issue of material fact where they failed to dispute physician's record of qualifications); *Cummiskey*, 719 F.Supp. at 1191 (granting summary judgment where plaintiff did not submit evidence to refute cruise line's evidence of physician's qualifications so as to create issue for jury). As such, summary judgment is appropriate on the issue of negligent selection, hiring, training, and supervision.

## B. Other Acts of Negligence

In the order issued on May 31, 2001, on Carnival's motion to dismiss, the court explained that Carnival cannot be held vicariously liable for Dr. Lunn's and Nurse Boyd–Little's negligent medical treatment, including their decision not to treat Jackson in his cabin or to disembark him immediately from the vessel. *See* Order at 7; *see also Warren v. Ajax Navig. Corp. of Monrovia*, No. 91–230, 1995 WL 688421 (S.D.Fla. Feb. 3, 1995) (stating that ship owner cannot be responsible for negligence of ship doctor). The order left open the possibility, however, that Carnival could be held liable if the plaintiff could produce evidence that Carnival was negligent in maintaining a policy that prevented doctors and nurses from treating passengers in their cabins or if Carnival delayed Jackson's disembarkation. *See* Order at 7–8.

The court has conducted an independent review of the record and has found no such evidence of negligence by Carnival. In fact, Carnival has submitted unrefuted evidence that Carnival does not get involved, directly or indirectly, with the treatment of its passengers. Together with its motion for summary judgment, Carnival provided the testimony by its Director of Medical Operations, who stated that Carnival lacks any kind of policy regarding treatment of patients in their cabins. He also testified that the decision about where to treat patients is left entirely to the individual physicians and nurses. *See* Def. Ex. A at 128. Because the plaintiff has not produced any evidence to support her allegation that Carnival was negligent in treating or disembarking Jackson, her claim for negligence must be dismissed.

## III. Breach of Contract of Carriage

■ Count II of the second amended complaint is against Carnival for breach of contract of carriage. Specifically, the plaintiff claims that Carnival failed to provide a seaworthy and safe vessel and services, including food products; adequate medical assistance, training, and supervision aboard its vessel; and safe passage. The general rule of admiralty law is that a ship's passengers are not covered by the warranty of seaworthiness, a term that imposes absolute liability on a sea vessel for the carriage of cargo and seamen's injuries. *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1335 (11th Cir. 1984) (holding that passenger's claims could not be based on unseaworthiness); *Doe v. Celebrity Cruises*, 145 F.Supp.2d 1337, 1346 (S.D.Fla.2001) (holding that passenger cannot maintain action for breach of implied warranty to provide safe passage).

■ As recognized in the prior order on Carnival's motion to dismiss, there is an exception to this rule if the ship owner executes a contractual provision that expressly guarantees safe passage. *See Hass v. Carnival Cruise Lines, Inc.*, No. 86–33–Civ, 1986 WL 10154 (S.D.Fla. Mar.20, 1986) (stating that ship owner can be liable for breach of contract of safe passage if it executes such a contractual provision). The court denied Carnival's motion to dismiss the plaintiff's breach of contract claim because it did not have the language of the contract at issue before it in order to determine whether the parties had executed a contractual provision guaranteeing safe passage. *See* Order at 10.

That language is now before the court, for Carnival has submitted a contract ticket identical to the one it executed with the plaintiff and her family for their trip in June of 1998.[5]

■ The court has reviewed this language and finds that Carnival's contract is devoid of any language that would give rise to an obligation guaranteeing safe passage. In fact, the contract specifically disavows responsibility the actions of the medical staff provided aboard a Carnival vessel:

> If the Vessel carries a physician, nurse, masseause, barber, hair dresser or manicurist, it is done solely for the convenience of the guest and any such person in dealing with the guest is not and shall not be considered in any respect whatsoever, as the employee, servant or agent of the Carrier and the Carrier shall not be liable for any act or omission of such person or those under his order or assisting him with respect to treatment, advice of care of any kind given to any guest.

*See* Def. Ex. G at ¶ 6.

■ Notwithstanding this disclaimer, the plaintiff contends that Carnival created a contract for safe passage because it refers to its passengers as "Guest" in the ticket contract. Referring to a passenger as a "Guest" is a far cry from creating a duty of safe passage. The plaintiff only argues that the use of the term "Guest" *implicitly* creates a guarantee, but the law is clear that maritime law *will not imply* a provision guaranteeing safe passage. *See Hass* at *1 (granting motion for summary

---

**5.** In support of its argument that Carnival's motion should be denied as to count II, the plaintiff contends that the contract submitted by Carnival is not the same one it entered into with the plaintiff. This argument is without merit. Although the contract submitted in support of summary judgment was executed between Carnival and another passenger, it is undisputed that the contract itself is identical to the one entered into between Carnival and the Jacksons. Whether the passenger that signed the contract submitted as evidence was the plaintiff or a third party is not material to this case.

judgment on breach of contract claim where contract did not contain provision creating contract for safe passage); *see also Doe*, 145 F.Supp.2d at 1346. If a contractual duty is created, it must arise *explicitly*.

 Given the ticket contract's explicit disavowal of any responsibility and the case law holding that a breach of contract of carriage cannot be created implicitly, the plaintiff cannot proceed with her claim for breach of contract. Even if the court were to find that Carnival had a contractual duty to provide the plaintiff and her husband with safe passage, however, the plaintiff has not presented any evidence to establish that Carnival has breached its duty. According to the complaint, Carnival failed to provide safe food products; adequate medical assistance, training, and supervision; and safe passage. There is no evidence that Jackson became ill as a result of the cruise ship's food. As discussed in section II, above, there is no evidence that Carnival breached its duty to adequately qualify, train, hire, or supervise its medical staff. In short, the plaintiff has not submitted any proof that Carnival could have done anything to get her husband safely ashore or to treat his illness effectively. Absent proof that a cruise line actually failed in performing its affirmative duties, the court will not make a cruise line an absolute guarantor of its passengers' safety. As such, Carnival's motion for summary judgment must be granted as to count II.

## IV. Failure to Warn

The plaintiff's final claim against Carnival is for failure to warn. Paragraphs one through three of this count have proven to be false. That is, there is no proof that Dr. Lunn and Nurse Boyd–Little lacked medical training and experience; that the vessel was unable to immediately disembark its passengers; or that Carnival had a policy prohibiting physicians from treating patients in their cabins.

 The remaining allegations under count IV seek to hold Carnival liable for failing to warn the plaintiff that it was immune from its medical staff's negligent acts or that it was not obligated to provide medical care to its passengers. The plaintiff's claim that Carnival failed to provide a warning is explicitly contradicted by the ticket contract, which states:

> If the Vessel carries a physician, nurse, masseuse, barber, hair dresser or manicurist, it is done solely for the convenience of the guest and any such person in dealing with the guest is not and shall not be considered in any respect whatsoever, as the employee, servant or agent of the Carrier and the Carrier shall not be liable for any act or omission of such person or those under his order or assisting him with respect to treatment, advice of care of any kind given to any guest.

*See* Def. Ex. G at ¶ 6. Furthermore, Carnival emphasizes the importance of this provision to its passengers on the first page of its ticket, which states, "Your attention is directed to these conditions, certain of which contain important limitations on rights of guests to assert claims against the cruise line, vessel or their agents or employees. Please read the contract and these terms and retain the contract for future reference." *See* Def. Ex. G.

 The plaintiffs have attempted to refute Carnival's argument by providing the report of their "medical expert", Dr. Peter Fisher concerning this matter. Dr. Fisher's statements cannot be considered by the court for two reasons. First, the deadline for providing expert reports was set for October 1, 2001, but the plaintiff did not produce this expert until February 7, 2002, when she filed the report together with her memorandum in opposition to

Carnival's motion for summary judgment. Second, the subject of Dr. Fisher's testimony is not appropriate for expert testimony. Dr. Fisher states that he has never seen a disclaimer concerning non-responsibility for medical staff and that such a disclaimer violates "today's fully informed consent decree and forms". This statement is nothing more than a legal conclusion. Not only is such testimony inappropriate, but it is not even clear from the record that Dr. Fisher is qualified to testify as an expert.

The plaintiff has not shown that the language appearing in the ticket contract fails to clearly warn passengers that Carnival cannot be held liable for its physician's or nurse's negligence and that such medical staff is provided solely for the passenger's convenience. As such, Carnival's motion for summary judgment on count IV must be granted.

## V. Exemplary Damages

As all of the claims by the plaintiff against Carnival have been dismissed, the plaintiff's request for exemplary damages also must be stricken.

Accordingly, it is:

## ORDERED AND ADJUDGED THAT:

1. Carnival's motion for summary judgment (DE # 103) is GRANTED.

2. Because no claims remain against Carnival or Dr. Lunn, only Nurse Boyd–Little remains as a defendant in this case.