Elise R. **LOBEGEIGER**, Plaintiff,

v.

**CELEBRITY CRUISES, INC.,
et al., Defendants.**

Case No. 11–21620–CIV.

United States District Court,
S.D. Florida.

April 13, 2012.

Jeffrey A. Greene, Franklin, TN, Kevin Kenneth Ross, Foley & Lardner, Orlando, FL, for Plaintiff.

Andrew Douglas Craven, Houck Anderson, P.A., John Joseph Quick, Royal Caribben Cruises, Ltd., William Frederick Fink, Wicker Smith O'Hara McCoy et al., Miami, FL, Daniel Philip Stiffler, Law Offices of Patricia E. Garagozlo, Plantation, FL, for Defendants.

### ORDER

CECILIA M. ALTONAGA, District Judge.

**THIS CAUSE** came before the Court on Defendant, Celebrity Cruises, Inc.'s ("Celebrity['s]") Motion for Summary Judgment ("Motion") [ECF No. 96], filed March 8, 2012. Celebrity seeks summary judgment as to Count IV (negligent hiring of shipboard medical doctor), Count V (negligence of Celebrity by apparent agency), and Count VI (fraudulent misrepresentation) of Plaintiff, Elise R. Lobegeiger's ("Plaintiff['s]") Second Amended Complaint ("Complaint") [ECF No. 47]. Plaintiff filed a Memorandum in Opposition ... ("Response") [ECF No. 121] on March 26, 2012, and Celebrity filed a Reply ... ("Reply") [ECF No. 139] on April 5, 2012. The Court has carefully considered the Motion, the parties' submissions, the record, and the applicable law.

## I. BACKGROUND[1]

This matter arises from injuries Plaintiff sustained as a passenger aboard the Celebrity Mercury ("Mercury"). Plaintiff booked a cruise with Celebrity by entering into a ticket contract ("Ticket Contract"). (*See* Celebrity's Statement of Undisputed Material Facts ("SMF") ¶ 1 [ECF No. 96] ). The Ticket Contract provides:

***IMPORTANT NOTICE TO GUESTS.***

YOUR CRUISE/CRUISETOUR TICKET CONTRACT CONTAINS IMPORTANT LIMITATIONS ON THE RIGHTS OF PASSENGERS. IT IS IMPORTANT THAT YOU CAREFULLY READ ALL TERMS OF THIS CONTRACT, PAYING PARTICULAR ATTENTION TO SECTION 3 AND SECTIONS 9 THROUGH 11, WHICH LIMIT OUR LIABILITY AND YOUR RIGHT TO SUE, AND RETAIN IT FOR FUTURE REFERENCE.

\* \* \*

### 1. INTRODUCTION:

This Cruise/CruiseTour Ticket Contract (the "Ticket Contract") describes the terms and conditions that will apply to the relationship between the passenger [as defined] and the Carrier [as defined] of the Vessel with respect to the Cruise or CruiseTour covered by this Agreement. Except as otherwise expressly provided herein, this Agreement supersedes any other written or oral representations or agreements relating to the subject matter of this Agreement or the Cruise or the CruiseTour.

\* \* \*

### 4. MEDICAL CARE AND OTHER PERSONAL SERVICES:

*a.* Availability of Medical Care. Due to the nature of travel by sea and the ports visited, the availability of medical care

---

1. Unless otherwise noted, the facts are undisputed.

onboard the Vessel and in ports of call may be limited or delayed and medical evacuation may not be possible from the Vessel while at sea or from every location to which the Vessel sails.

*b.* Relationship with Service Providers. To the extent Passengers retain the services of medical personnel or independent contractors on or off the Vessel, Passengers do so at their sole risk. Any medical personnel attending to a Passenger on or off the Vessel, if arranged by Carrier, are provided solely for the convenience of the Passenger, work directly for the Passenger, and shall not be deemed to be acting under the control or supervision of the Carrier, as Carrier is not a medical provider. Likewise, any onboard concessions (including but not limited to the gift shops, spas, beauty salon, art program, photography, formalwear concessions) are either operated by or are independent contractors on board the Vessel, on Transport or elsewhere and are provided solely for the convenience of Passenger. Even though the Carrier shall be entitled to charge a fee and earn a profit for arranging such services, all such persons or entities shall be deemed independent contractors and not acting as agents or representatives of Carrier. Carrier assumes no liability whatsoever for any treatment, failure to treat, diagnosis, misdiagnosis, actual or alleged malpractice, advice, examination or other services provided by such persons or entities. Guest acknowledges that the Vessel's hair dresser, manicurist, art auctioneer, gift shop personnel, spa personnel, wedding planners and other providers of merchandise and personal services are employees of independent contractors and that Carrier is not responsible for their actions.

*c.* Payment for Medical or Personal Care Services. Passenger shall pay for all medical care or other personal services requested or required, whether onboard or ashore, including the cost of any emergency medical care or transportation incurred by Carrier. If Passenger is unable to pay and the Carrier pays for such expenses, then Passenger shall reimburse Carrier for those expenses.

\* \* \*

**11. LIMITATIONS OF LIABILITY:**

*a.* CARRIER SHALL NOT BE LIABLE FOR INJURY, DEATH, ILLNESS, DAMAGE, DELAY OR OTHER LOSS TO PERSON OR PROPERTY, OR ANY OTHER CLAIM BY ANY PASSENGER CAUSED BY ACT OF GOD, WAR, TERRORISM, CIVIL COMMOTION, LABOR TROUBLE, GOVERNMENT INTERFERENCE, PERILS OF THE SEA, FIRE, THEFTS OR ANY OTHER CAUSE BEYOND CARRIER'S REASONABLE CONTROL, OR ANY ACT NOT SHOWN TO BE CAUSED BY CARRIER'S NEGLIGENCE.

*b.* PASSENGER AGREES TO SOLELY ASSUME THE RISK OF INJURY, DEATH, ILLNESS OR OTHER LOSS, AND CARRIER IS NOT RESPONSIBLE FOR PASSENGER'S USE OF ANY ATHLETIC OR RECREATIONAL EQUIPMENT; OR FOR THE NEGLIGENCE OR WRONGDOING OF ANY INDEPENDENT CONTRACTORS, INCLUDING BUT NOT LIMITED TO PHOTOGRAPHERS, SPA PERSONNEL OR ENTERTAINERS; OR FOR EVENTS TAKING PLACE OFF THE CARRIER'S VESSELS, LAUNCHES OR TRANSPORTS, OR AS PART OF ANY SHORE EXCURSION, TOUR OR ACTIVITY.

(*Id.* ¶ 2; Ticket Contract [ECF No. 96–1] (alterations in original)).

On boarding the Mercury, Plaintiff signed and completed an Xpress Pass, which states:

> I, Elise Lobegeiger certify that I am over 18 years of age, and that during the online check-in process, I read and accepted all of the conditions stated on the cruise ticket contract with authority and on behalf of the following guests:
>
> **Guest from Primary Reservation: Elise Lobegeiger**

(SMF ¶ 10; Xpress Pass [ECF No. 96–2] (alterations in original)). On a guest's presentation to the Mercury's infirmary, a form titled "Medical Facility—Consultation Request—Guest" ("Medical Form"), is completed. (*See* SMF ¶ 11). A Medical Form [ECF No. 96–3] was completed in Plaintiff's case. (*See id.*). The Medical Form states, "Physicians are independent contractors," in bold font. (*Id.*; Medical Form).

Dr. Charles Laubscher ("Dr. Laubscher") is a physician from South Africa. (*See* SMF ¶ 11). Celebrity and/or Defendant, Royal Caribbean Cruises Ltd. ("RCCL") has a medical department comprised of a vice-president, assistant vice-presidents, directors, managers, and possibly supervisors. (*See* Pl.'s Statement of Undisputed Material Facts ("SMFO") ¶ 12 [ECF No. 121]). The head of this department is Dr. Arthur L. Diskin ("Dr. Diskin"), whose official title is "Vice President, Global Chief Medical Officer, Royal Caribbean Cruises International." (*Id.*).

Although requests for references for Dr. Laubscher were sent out in Dr. Diskin's name, references were actually returned to and reviewed by registered nurse Karen Adair ("Adair"). (*See id.* ¶ 13). On March 26, 2012, Celebrity and RCCL (collectively, "Cruise Defendants") provided Plaintiff with Chapter 5 of their medical employee manual entitled "MEDICAL—RCL; Chapter 5—Processes" ("Medical Manual") [ECF No. 121–3]. (*Id.* ¶ 14).

## II. LEGAL STANDARD

Summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). In making its assessment of summary judgment, the Court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party," *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir.1997), and "must resolve all reasonable doubts about the facts in favor of the non-movant." *United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of America*, 894 F.2d 1555, 1558 (11th Cir. 1990).

"By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248, 106 S.Ct. 2505. Likewise, a dispute about a material fact is a "genuine" issue "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and iden-

tifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. 2548. In those cases, there is no genuine issue of material fact "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323, 106 S.Ct. 2548.

## III. ANALYSIS

The Court addresses each of Celebrity's arguments with regard to Counts IV, V and VI below.

### A. Count V—Negligence by Apparent Agency

■ Celebrity contends that "[a] cruise line cannot be liable for the medical negligence of its medical staff." (Mot. 6). Citing "well-established maritime law," and appearing to address the sufficiency of Plaintiff's pleading rather than evidence, Celebrity asserts that Plaintiff's allegations of apparent agency fail to state a claim. (*Id.* 7). In particular, Celebrity cites a decision disfavoring apparent agency liability on the part of a cruise line for a shipboard physician. (*See id.* 7–8 (citing *Hill v. Celebrity Cruises, Inc.,* No. 09-23815–CIV, 2011 WL 5360247 (S.D.Fla. Nov. 7, 2011))). Celebrity repeats arguments fully considered by the Court at the motion-to-dismiss stage in the August 23, 2011, Order 2011 WL 3703329 [ECF No. 43], which found apparent agency liability to be consistent with general maritime tort principles of harmony and uniformity, assuming necessary elements were satisfied.

■ Effectively, Celebrity is asking the Court to reconsider its holding without pointing to any intervening change in *controlling* law, new evidence, or clear error. *See Instituto de Prevision Militar v. Lehman Bros., Inc.,* 485 F.Supp.2d 1340, 1342 (S.D.Fla.2007). "It is an improper use of 'the motion to reconsider to ask the Court to rethink what the Court already thought through—rightly or wrongly.'" *Z.K. Marine, Inc. v. M/V Archigetis,* 808 F.Supp. 1561, 1563 (S.D.Fla.1992) (quoting *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.,* 99 F.R.D. 99, 101 (E.D.Va.1983)). The Court sees no reason to reconsider its decision and declines to grant summary judgment for Celebrity on the basis that Celebrity may not be found liable as a matter of law for a shipboard doctor's negligence under a theory of apparent agency.

■ Celebrity goes on to argue that even if a claim for apparent agency is permissible, Plaintiff cannot prove her claim on the facts in the record. Under general maritime law, to state a claim premised on apparent agency, a plaintiff must show:

1) the alleged principal ma[de] some sort of manifestation causing a third party to believe that the alleged agent had authority to act for the benefit of the principal, 2) that such belief was reasonable, and 3) that the claimant reasonably acted on such belief to his detriment.

*Doonan v. Carnival Corp.,* 404 F.Supp.2d 1367, 1371 (S.D.Fla.2005). According to Celebrity, any belief by Plaintiff that Dr. Laubscher was Celebrity's agent was necessarily unreasonable as a matter of law, "given the long standing maritime principle that carriers and shipowners are not vicariously liable for the acts of their medi-

cal staff." (Mot. 9 (quoting *Wajnstat v. Oceania Cruises, Inc.*, No. 09–21850–Civ, 2011 WL 465340, at *5 (S.D.Fla. Feb. 4, 2011))). This is, however, merely another attempt to have the Court reconsider its earlier finding that a plaintiff's belief in the apparent agency of a shipboard doctor is not *per se* unreasonable as a matter of law. As previously stated, "[t]he Court does not agree that a cruise line can affirmatively hold shipboard doctors out to passengers as their agents and still remain immune from liability simply because of the traditional maritime principle that shipboard doctors are not agents of the ship's owner." (Aug. 23, 2011 Order 21). The Court sees no basis for revisiting this holding now.

 Celebrity contends, however, that the Ticket Contract between Plaintiff and Celebrity precluded a reasonable belief that Dr. Laubscher was Celebrity's agent. (*See* Mot. 10). The Ticket Contract states that the shipboard doctor is an independent contractor, for whose actions Celebrity is not responsible. (*See id.*). In the August 23, 2011 Order, the Court rejected this argument as premature at the motion-to-dismiss stage, while acknowledging that some courts had found a passenger ticket contract to be evidence that a belief in an agency relationship is unreasonable. (*See* Aug. 23, 2011 Order 21–22).

In *Suter v. Carnival Corp.*, No. 07–20298–CIV, 2007 WL 4662144 (S.D.Fla. May 14, 2007), the undersigned considered facts similar to those in the present action, but at the motion-to-dismiss stage. The Court held that "[t]he determination of whether the cruise line has made some sort of manifestation that could cause a third party to believe that the shipboard doctor is an agent of the cruise line is a question of fact." *Id.* at *6. Certain affirmative acts by a cruise line could suggest agency, while others might suggest the opposite. In that case, Carnival argued

that dismissal of the passenger's apparent agency claim was appropriate because the ticket disclosed that the shipboard doctor was an independent contractor and not Carnival's agent. *See id.* Dismissal on the basis of the ticket alone was found to be improper, where the fact-finder had not yet had an opportunity to evaluate the facts uncovered during discovery. *See id.* The Court considered it significant that the pleading did not show the passenger had read and understood the terms and conditions included in her ticket. *See id.* at *7.

The present action is, of course, at the more advanced summary-judgment stage, and it is undisputed that the Ticket Contract and Medical Form clearly describe the shipboard doctor as an independent contractor, not under Celebrity's control. Plaintiff does not dispute having read and acknowledged these documents. In *Suter*, the Court was able to distinguish a case on which the cruise line relied, *Floyd v. Humana of Virginia, Inc.*, 787 S.W.2d 267, 270 (Ky.Ct.App.1990), largely because in *Floyd* evidence was presented at summary judgment that the plaintiff had read, understood, and signed a form indicating the doctor was an independent contractor, and the hospital had made no representation otherwise. *See* 2007 WL 4662144, at *6 (citing *Floyd*, 787 S.W.2d at 270). In the August 23, 2011 Order, moreover, the Court cited several other cases in which a passenger ticket contract precluded a reasonable belief in an agency relationship. (*See* Aug. 23, 2011 Order 21–22 (citing *Peterson v. Celebrity Cruises, Inc.*, 753 F.Supp.2d 1245 (S.D.Fla.2010); *Hajtman v. NCL (Bahamas) Ltd.*, 526 F.Supp.2d 1324 (S.D.Fla.2007); *Wajnstat v. Oceania Cruises, Inc.*, No. 09–21850–Civ, 2011 WL 465340 (S.D.Fla. Feb. 4, 2011))).

Plaintiff, however, asserts that there is an issue of fact as to apparent agency

because "apart from the lengthy, boilerplate documents relied upon by Celebrity, all of the facts support a finding of apparent agency." (Resp. 6). Plaintiff also contends that even the contract documents themselves do not unequivocally notify the passengers that Celebrity shares no liability for the doctor's actions. While the Ticket Contract refers to the shipboard doctor as an "independent contractor," Plaintiff points out that this is not in and of itself inconsistent with an agency relationship. (*Id.* 6 (citing *Roessler v. Novak,* 858 So.2d 1158, 1162 (Fla. 2d DCA 2003) ("[A] hospital may be held vicariously liable for the acts of physicians, even if they are independent contractors, if these physicians act with the apparent authority of the hospital.")).

Moreover, the statement that "[c]arrier assumes no liability whatsoever for any treatment" is, according to Plaintiff, "buried in Section 4(b) of the ticket contract, a single-spaced, un-highlighted provision in the middle of a nine-page document." (*Id.*). This section of the Ticket Contract states: "To the extent Passengers retain the services of medical personnel or independent contractors on or off the Vessel, Passengers do so at their sole risk. Any medical personnel attending to a Passenger on or off the Vessel, if arranged by Carrier, are provided solely for the convenience of the Passenger, work directly for the Passenger, and shall not be deemed to be acting under the control or supervision of the Carrier, as Carrier is not a medical provider." (Ticket Contract § 4).

In the section of the Ticket Contract titled "IMPORTANT NOTICE TO GUESTS," Celebrity instructs passengers to pay particular attention to sections surrounding Section 4, but not Section 4 itself. (*Id.* 6–7). In Section 11, on "LIMITATIONS OF LIABILITY," the Ticket Contract states, "PASSENGER AGREES TO SOLELY ASSUME THE RISK OF INJURY, DEATH, ILLNESS OR OTHER LOSS, AND CARRIER IS NOT RESPONSIBLE FOR PASSENGER'S USE OF ANY ATHLETIC OR RECREATIONAL EQUIPMENT; OR FOR THE NEGLIGENCE OR WRONGDOING OF ANY INDEPENDENT CONTRACTORS, INCLUDING BUT NOT LIMITED TO PHOTOGRAPHERS, SPA PERSONNEL OR ENTERTAINERS." (*Id.* 7; Ticket Contract). Thus, Plaintiff notes that in this section the agreement does not specifically list shipboard doctors as independent contractors.

The language of the Ticket Contract limiting Celebrity's liability with respect to the shipboard doctor is unmistakable—Section 4 of the Ticket Contract alone clearly absolves Celebrity of responsibility for the shipboard doctor. The issue is whether Plaintiff may nevertheless create an issue of fact as to the doctor's apparent agency, despite having read and acknowledged the Ticket Contract's terms. Another way of formulating the question is whether the terms of the Ticket Contract preclude an issue of fact as to apparent agency as a matter of law.

As an initial matter, while Plaintiff may be correct that an independent contractor may still be the apparent agent of a principal, the Court has difficulty seeing how this is true if the passenger is explicitly made aware of the independent contractor's employment status. This awareness would seem to negate the passenger's (mistaken) assumption that the independent contractor was the actual agent of the principal. Thus, in *Roessler,* the case cited by Plaintiff, there does not appear to have been any written document explaining that the doctor in question was not an agent of the hospital. The plaintiff in *Roessler* believed the doctor was the hospital's agent solely on the basis of the hospital's actions.

*See* 858 So.2d at 1162–63. The Court weighs *Roessler*, distinguishable on the facts, against the substantial persuasive case law suggesting the Ticket Contract precludes Celebrity's liability on an apparent agency theory. In doing so, the Court finds there is no genuine issue of fact as to whether Plaintiff could have had a reasonable belief in the shipboard doctor's apparent agency, given her undisputed knowledge of the Ticket Contract.

Plaintiff further points out that in the Medical Manual, the Cruise Defendants address their shipboard physicians, stating, "You are a representative of the Company. If you are in doubt as to your role in this function or with regard to any other matter, excuse yourself and contact the Staff Captain." (Medical Manual). Celebrity asserts that the Medical Manual has "nothing to do with" the shipboard doctor's care of passengers, and it is undisputed Celebrity has no policies relating to how a passenger is treated by the shipboard doctor. (Reply 5). Celebrity further contends that the Medical Manual is irrelevant to Plaintiff's belief, as there is no evidence she ever saw the manual before discovery. (*See id.*).

The Court agrees with Celebrity. This single ambiguous statement of the Medical Manual, which could not have formed Plaintiff's reasonable belief in any event as she never saw it prior to commencing this action, does not create a genuine issue of fact as to Celebrity's negligence under a theory of apparent agency. The Court therefore grants summary judgment for Celebrity on this count.

## B. Count IV—Negligent Hiring

 As to Count IV, Celebrity acknowledges the "basic rule" that "[w]hen a carrier undertakes to employ a doctor aboard [its] ship for its passengers' convenience, the carrier has a duty to employ a doctor who is competent and duly quali-

fied." (Mot. 12 (quoting *Barbetta v. S.S. Bermuda Star*, 848 F.2d 1364, 1369 (5th Cir.1988))). This duty is satisfied "when the physician's fitness is diligently inquired into; proper evidence of his treatment does not prove that he was incompetent or that the company was negligent in hiring him." *Jackson v. Carnival Cruise Lines, Inc.*, 203 F.Supp.2d 1367, 1374 (S.D.Fla. 2002) (quoting *Cummiskey v. Chandris*, 719 F.Supp. 1183 (S.D.N.Y.1989)).

 Celebrity asserts Plaintiff has not met her evidentiary burden in showing Dr. Laubscher was unqualified. According to Celebrity, Dr. Laubscher's qualifications are undisputed, and Plaintiff has offered "no evidence" to undermine Dr. Laubscher's credentials and experience. (Mot. 12). Celebrity states that based on Dr. Laubscher's personnel file, Celebrity "reviewed his resume, obtained clinical references, checked and verified original diplomas and licenses, verified that they were current, and completed credentialing paperwork to ensure he was duly licensed." (*Id.* 13 (citing Deposition of Amanda Jacobs, Feb. 9, 2012 ("Jacobs Dep.") [ECF No. 96–5] 48:12–50:8)).

Plaintiff contends that the sole evidence Celebrity has offered is Dr. Laubscher's file, without any declaration by an employee or the head of the medical department, Dr. Diskin. (*See* Resp. 7). The file includes a "Reference Verification Request" form sent by Dr. Diskin to a Dr. Robert Silcox ("Dr. Silcox"), asking for a reference in light of Dr. Laubscher's application for a position with Celebrity as a shipboard physician. (*See* Silcox Reference Request [ECF No. 121–1]). The Reference Verification Request indicates that Dr. Silcox worked with Dr. Laubscher for two weeks on a cruise ship. (*See id.*). There is no other information on the form about Dr. Silcox or his qualifications to review Dr. Laubscher's credentials. (*See id.*). Plain-

tiff states that the file indicates the Reference Verification Requests were sent out in the name of Dr. Diskin, but were returned to and reviewed by Adair, a registered nurse. (*See* Resp. 7).

Plaintiff contrasts the facts in the instant action with those in *Jackson*, in which there was sworn testimony on the "extensive procedure employed by Carnival to ensure that its doctors and nurses are properly investigated, qualified, and trained." 203 F.Supp.2d at 1374. Dr. Diskin in that case testified that he personally reviewed and approved the doctor's credentials. *See id.* at 1372. Carnival had an expert witness produce a report attesting to the cruise line's verification of the doctor's credentials as well. *See id.* According to Plaintiff, the personnel file of Dr. Laubscher "shows only a cursory pre-hiring review by a nurse, not a physician," and does not show Celebrity was not negligent in his hiring. (Mot. 8).

Whether Celebrity negligently hired Dr. Laubscher is an issue of fact. The question again is whether Plaintiff has presented enough evidence to create a genuine issue of disputed fact. With the Motion, Celebrity has attached Dr. Laubscher's file, which is extensive and contains a great deal of information about his credentials and references, and Celebrity's attempts to verify them. (*See* [ECF No. 96–4]).[2] In context, the single Reference Verification Request to Dr. Silcox is truly an insubstantial portion of the file. If Celebrity's investigation were limited to a reference by a physician who worked with Dr. Laubscher for two weeks aboard a ship, the Court agrees a reasonable jury certainly could find this investigation lacking.

However, even the selected portion of the file on which Plaintiff focuses contains identical Reference Verification Request forms from two other physicians, one of whom worked with Dr. Laubscher for several years and was presumably better placed to evaluate his credentials. Moreover, there is uncontroverted testimony that Celebrity conducted its review of Dr. Laubscher's credentials as usual. (*See* Jacobs Dep. 48:12–17; 49:12–16). Even if it was Adair who reviewed Dr. Laubscher's file, there is no evidence suggesting she was not qualified to do so, or that a physician would have uncovered a problem she overlooked. The Court sees nothing in the extensive file, and neither apparently does Plaintiff, suggesting a red flag that should have alerted Adair or Dr. Diskin that further investigation was required. Any supposition Adair was unqualified appears to be pure speculation on Plaintiff's part.

In light of the undisputed facts in the record, the Court simply cannot find a genuine issue of fact as to whether Celebrity negligently hired Dr. Laubscher. Plaintiff's argument, premised as it is on one of the Reference Verification Request forms, coupled with a lack of certain sworn testimony, simply cannot prevail against the overwhelming amount of evidence of Celebrity's diligence in hiring Dr. Laubscher. The Court grants summary judgment for Celebrity on this count of negligent hiring.

### C. Count VI—Fraudulent Misrepresentation

■ Finally, Celebrity contends that the fraudulent misrepresentation claim must fail because Plaintiff cannot prove reliance

---

2. These include a lengthy curriculum vitae detailing Dr. Laubscher's past positions, the Reference Verification Requests, various personal data and background check forms, RCCL's credentialing checklist, affidavits by Dr. Laubscher as to his competency to perform various tasks, entries for Dr. Laubscher in registered medical databases, professional education certificates, verifications of his degrees, and copies of those degrees.

on any statement made by Celebrity. Florida law applies to this claim. *See Baggett v. Richardson,* 473 F.2d 863, 864 (5th Cir.1973). "[T]here are four elements of fraudulent misrepresentation: '(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation.'" *Butler v. Yusem,* 44 So.3d 102, 105 (Fla.2010) (quoting *Johnson v. Davis,* 480 So.2d 625, 627 (Fla.1985)).

 According to Celebrity, Plaintiff only claims representations were made by Dr. Laubscher, not Celebrity. Since Celebrity may not be vicariously liable for Dr. Laubscher's actions, it cannot be held vicariously liable for his representation. (*See* Mot. 14). Plaintiff states in response that since it is a question for the jury whether Celebrity may be vicariously liable for Dr. Laubscher, this claim should not be dismissed. Because the Court finds Celebrity cannot be vicariously liable for Dr. Laubscher's actions, whether through actual or apparent agency, the Court grants summary judgment for Celebrity on this count.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that Defendant's Motion **[ECF No. 96]** is **GRANTED.**

