**Shirley BIRD, Plaintiff,**

v.

**CELEBRITY CRUISE LINE, INC., Defendant.**

**Nos. 05–20603–CV–ALTONAGA, 05–20603–CV–TURNOFF.**

United States District Court, S.D. Florida, Miami Division.

Nov. 4, 2005.

---

Terrance Dill, Gaines West, West Webb Allbritton & Gentry PC, College Station, TX, for Plaintiff.

Carol Lynn Finklehoffe, McIntosh Sawran Peltz Cartaya Petruccelli, Miami, FL, for Defendant.

## ORDER ON DEFENDANT'S MOTION TO DISMISS

ALTONAGA, District Judge.

**THIS CAUSE** came before the Court on Defendant, Celebrity Cruise Line, Inc.'s ("Celebrity"['s]) July 22, 2005 Motion to Dismiss [D.E. 36] the implied warranty of merchantability (Count "B") and strict products liability (Count "C") claims asserted by Plaintiff, Shirley Bird ("Bird"), in the First Amended Complaint ("FAC"). The Court has carefully considered the parties' written submissions and applicable law.

## I. BACKGROUND

Bird filed a Complaint against Celebrity on March 2, 2005 [D.E. 1]. After Bird's Complaint was dismissed without prejudice [D.E. 33], Bird filed the FAC on July 14, 2005 [D.E. 35]. The FAC alleges that Bird embarked upon a seven-night cruise on one of Celebrity's vessels, the "Galaxy," on March 7, 2004. She did so pursuant to a contract with Celebrity, a photocopy of which is attached as Exhibit 1 to the FAC.

Upon returning from the trip, Bird became violently ill and was rushed to the emergency room several days later. Bird claims that she was diagnosed with bacterial enteritis, a disease she allegedly contracted as a result of poisoning from food [1] ingested on board the cruise. Bird allegedly required surgery because of complications arising from the illness.

The only mention of food in the parties' contract appears in paragraph 3 as follows: "No undertaking or warranty shall be given or shall be implied as to the seaworthiness, fitness or condition of the Vessel or any food or drink supplied on board." (*FAC Ex. 1*). Notwithstanding this contractual disclaimer, Bird's FAC seeks to hold Celebrity liable under theories of negligence, strict products liability and the implied warranty of merchantability. Celebrity argues [2] that Counts "B" and "C" of the FAC should be dismissed because admiralty law does not recognize causes of action based upon the implied warranty of merchantability (Count "B") or strict products liability (Count "C").

## II. ANALYSIS

### A. Legal Standard

"Dismissal is appropriate where it is clear the plaintiff can prove no set of facts in support of the claims in the complaint. Accordingly, the court may dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Marshall County Bd. of*

---

1. Paragraph 9 of the FAC also alludes to several other possible causes of the infection, such as crew members' carrying of infectious diseases or Celebrity's failure to adequately clean the Galaxy.

2. Alternatively, and not resolved in this Order, Celebrity argues that even if admiralty law generally recognizes such causes of action, its contract with Bird expressly disclaims any implied warranty of merchantability, and Florida law does not recognize a strict liability cause of action where two parties are in privity of contract.

*Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir.1993) (citations omitted). "In ruling on the motion to dismiss the district court must accept the well pleaded facts as true and resolve them in the light most favorable to the plaintiff." *St. Joseph's Hosp., Inc. v. Hosp. Corp. of America*, 795 F.2d 948, 954 (11th Cir.1986). "When the allegations contained in a complaint are wholly conclusory, however, and fail to set forth facts which, if proved, would warrant the relief sought, it is proper to dismiss for failure to state a claim." *Davidson v. Georgia*, 622 F.2d 895, 897 (5th Cir.1980).

"In ruling on a motion to dismiss, the Court is constrained to review the allegations as contained within the four corners of the complaint and may not consider matters outside the pleading without converting the defendant's motion into one for summary judgment." *Crowell v. Morgan Stanley Dean Witter Services, Co.*, 87 F.Supp.2d 1287, 1290 (S.D.Fla.2000); *see also Milburn v. United States*, 734 F.2d 762, 765 (11th Cir.1984) ("Consideration of matters beyond the complaint is improper in the context of a motion to dismiss .... [T]he court converts a motion to dismiss into a motion for summary judgment by considering matters beyond the complaint."). In evaluating a motion to dismiss, however, a court may also consider any exhibits to the complaint. *See Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir.2000).

## B. Admiralty Law Governs the Substantive Issues in the Case

■■■ Bird's First Amended Complaint invokes diversity of citizenship as the basis for the Court's jurisdiction. However, "[e]ven when ... the parties allege diversity of citizenship as a basis of subject mat-

ter jurisdiction, if admiralty jurisdiction also exists, federal maritime law governs the substantive issues in the case." *Jackson v. Carnival Cruise Lines, Inc.*, 203 F.Supp.2d 1367, 1373 (S.D.Fla.2002), *citing Everett v. Carnival Cruise Lines*, 912 F.2d 1355, 1358 (11th Cir.1990). "[A] party seeking to invoke federal admiralty jurisdiction ... over a tort claim must satisfy conditions both of location and of connection with maritime activity." *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995). "Personal injury claims by passengers on cruise lines and other ship passengers have routinely been subject to the court's admiralty jurisdiction." *Petitt v. Celebrity Cruises, Inc.*, 153 F.Supp.2d 240, 251 (S.D.N.Y.2001) (citations omitted).

■■■ The two required conditions of location and connection to maritime activity are met in this case. First, the alleged food poisoning or other unsanitary conditions giving rise to Bird's claims occurred while Bird was on board the ship, thereby satisfying the location condition.

As to the second condition of the test, connection with maritime activity, the Supreme Court has held that:

> [a] court, first, must assess the general features of the type of incident involved to determine whether the incident has a potentially disruptive impact on maritime commerce. Second, a court must determine whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity.

*Grubart*, 513 U.S. at 534, 115 S.Ct. 1043.

Both conditions of the connection test are satisfied. Because "the cruise line industry is maritime commerce," food poi-

soning on board a ship "has a potentially disruptive impact on maritime commerce." *See Doe v. Celebrity Cruises, Inc.,* 394 F.3d 891, 900 (11th Cir.2004). Furthermore, serving food on board ships certainly bears a "substantial relationship to traditional maritime activity." Therefore, the Court employs admiralty law as the substantive law of this case.

## C. Implied Warranty of Merchantability Claim (Count "B")

■ The operative question as to Count "B" is whether under admiralty law, a cruise ship passenger may hold the ship operator liable under a theory of breach of the implied warranty of merchantability. It is black letter law, and Bird apparently concedes, that admiralty law will not imply a warranty of safe passage or seaworthiness where the warranties are not expressly made a part of a passenger's contract. *Stires v. Carnival Corp.,* 243 F.Supp.2d 1313, 1320–21 (M.D.Fla.2002) ("unless the contract expressly guaranteed safe passage, maritime law will not support a breach of contract of carriage guaranteeing safe passage ... [n]either will maritime law imply a warranty of seaworthiness"); *Hass v. Carnival Cruise Lines, Inc.,* No. 86–33, 1986 WL 10154, at *1 (S.D.Fla.1986) ("[a] review of the contract of carriage reveals no provision guaranteeing safe passage and the law of admiralty will not imply one"); *Jackson,* 203 F.Supp.2d at 1377 ("a ship's passengers are not covered by the warranty of seaworthiness, a term that imposes absolute liability on a sea vessel for the carriage of cargo and seamen's injuries ... [except] if

the ship owner executes a contractual provision that expressly guarantees safe passage"); *Rockey v. Royal Caribbean Cruises, Ltd.,* No. 99–708, 2001 WL 420993, at *6 (S.D.Fla.2001) (the law of admiralty will not imply a warranty of seaworthiness and will not support a breach of contract action unless there is an express provision in the contract of carriage guaranteeing safe passage).

■ Bird, however, argues that she does not allege a breach of the warranties of either seaworthiness or safe carriage; instead, she alleges a breach of the warranty of merchantability. Bird contends that because admiralty law has not directly addressed this precise issue, the Court should adopt Florida law which would provide for a warranty of merchantability under these circumstances.[3] Indeed, "when neither statutory nor judicially created maritime principles provide an answer to a specific legal question, courts may apply state law provided that the application of state law does not frustrate national interests in having uniformity in admiralty law." *Coastal Fuels Marketing, Inc. v. Florida Exp. Shipping Co., Inc.,* 207 F.3d 1247, 1251 (11th Cir.2000).

As demonstrated by the above-cited cases, however, courts have manifested a strong reluctance to imply warranties in contracts governed by admiralty law. In *Jackson v. Carnival Cruise Lines,* 203 F.Supp.2d 1367, for example, in pleading a breach of the contract of carriage, the complaint alleged, in part, that Carnival had failed to provide safe food products. *Id.* at 1377. Although the *Jackson* court cited to the general law prohibiting the

---

**3.** That warranty is found in § 2–314 of the Uniform Commercial Code, and is codified in Fla. Stat. § 672.314, in pertinent part as follows: "(1) Unless excluded or modified (s.672.316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind...."

implication of the warranty of seaworthiness in dismissing the claim, it is nevertheless noteworthy that the court refused to distinguish between claims alleging a breach of the warranty of seaworthiness based on unsafe food and the breach based upon other factors. Thus, in keeping with admiralty law's general reluctance to imply warranties, the *Jackson* court was unwilling to imply a warranty of safe food products.[4]

Bird seeks to overcome this reluctance by noting that "Celebrity has not cited any cases specifically holding that maritime law will not imply the warranty of merchantability in a ticket contract." (*Plaintiff's Response Memo.* at p. 8). Bird does cite two cases where courts recognized claims for breach of the implied warranty of merchantability. One of them, *Pietrafesa v. Board of Governors for Higher Educ.*, 846 F.Supp. 1066, 1070–73 (D.R.I. 1994), involved a cross-claim by a defendant against the manufacturer of the ship. While the court rejected the claim under the facts presented, it implicitly recognized that the warranty of merchantability may be implied against boat manufacturers. The other case cited by Bird, *Complaint of American Export Lines, Inc.*, 620 F.Supp. 490 (S.D.N.Y.1985), similarly involved a complaint against a ship's manufacturer.

While these cases demonstrate that admiralty law may imply a warranty of merchantability against a ship's *manufacturer*, they certainly do not overcome this Circuit's clear reluctance to imply warranties in claims brought by a cruise ship passenger against the ship's *owner* or *operator*. No principled justification is offered for the Court to depart from the reluctance of admiralty law to imply warranties.

Moreover, the allegations of Bird's First Amended Complaint do not present a circumstance justifying a departure from the reluctance in admiralty law to imply a warranty. The FAC does allege that the "food and drink ... was unmerchantable because it would not pass without objection in the trade." (*FAC ¶ 12*). As stated, however, the only mention of food or beverage in the parties' contract disclaims any warranty as to the food or drink furnished: "No undertaking or warranty shall be given or shall be implied as to the seaworthiness, fitness or condition of the Vessel *or any food or drink supplied on board.*" (*FAC Ex. 1, ¶ 3*) (emphasis supplied). Notwithstanding the clear contractual language, the First Amended Complaint asserts that the "provision of clean and safe food is an essential and necessary function of Celebrity's contractual obligation" and that "attempts to disclaim the implied warranty of merchantability in the ticket/contract ... must fail." (*FAC ¶ 14*).

The *clear contractual language* disavows any warranty as to the food or drink supplied on board.[5] Neither the allegations of the FAC nor Bird's arguments persuade the Court to abandon the general rule against implying warranties in admiralty contracts. Moreover, to do so would

---

4. The *Jackson* court also noted that even if it had found a duty to provide safe passage, plaintiffs had failed to produce sufficient evidence to support their breach of contract claim. *Jackson*, 203 F.Supp.2d at 1378. However, the opinion was primarily concerned with the lack of any warranty in the first place.

5. Celebrity has also argued that, even under Florida law, Bird's claim must fail because the parties' contract effectively disclaims all warranties. This Order does not address the sufficiency of the disclaimer under Fla. Stat. § 672.316.

upset the "national interests in having uniformity in admiralty law." *Coastal Fuels Marketing*, 207 F.3d at 1251. Thus, and in the absence of any case specifically holding that maritime law will imply the warranty of merchantability in a cruise ship ticket contract, the undersigned so holds.

## D. Availability of Strict Products Liability (Count "C") Under Admiralty Law

■ Celebrity also argues that admiralty law is well-settled in its refusal to hold common carriers liable in strict liability, and thus Count "C" also fails to state a cause of action. Bird, however, maintains that admiralty law has neither recognized, nor rejected, a strict liability cause of action against a common carrier, and thus the Court should adopt Florida law in rejecting the Motion.

In *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959), the Supreme Court addressed the appropriate standard of care owed by the owner of a vessel to those on board. *Kermarec* involved a plaintiff who, while visiting a crew member on defendant's ship, suffered injury after falling down a stairway. In rejecting the distinctions made by the common law between invitees and licencees (on land), the Court held "that the owner of a ship in navigable waters owes to all who are on board for purposes not inimical to his legitimate interests the duty of exercising reasonable care under the circumstances of each case." *Id.* at 630–32, 79 S.Ct. 406. Although the case did not involve a paying passenger, the broad language of the Court's holding suggests that paying passengers are not owed any higher duty, a proposition adhered to by numerous subsequent decisions within this Circuit. *See,*

*e.g., Keefe v. Bahama Cruise Line, Inc.,* 867 F.2d 1318, 1321–22 (11th Cir.1989).

The Eleventh Circuit recently engaged in an extensive discussion of the relevant standards of care owed to passengers on cruise ships in *Doe v. Celebrity Cruises, Inc.,* 394 F.3d 891. In *Doe,* a passenger on a cruise ship was sexually assaulted by a member of the ship's crew. After surveying the relevant Supreme Court and Eleventh Circuit jurisprudence, the court held that cruise operators are strictly (vicariously) liable for assaults committed by crew members against passengers. *Id.* at 913. In so holding, the court noted that:

> *Kermarec* was a common, garden variety negligence case no matter how it is characterized. Indeed, *Kermarec* addressed the standard of care owed by common carriers in a situation where a person sustained personal injuries due to the physical condition of the ship .... Quite simply, there is no indication in *Kermarec* that the Supreme Court intended to eliminate the more stringent rule in *Jopes* imposing liability on a common carrier for its employees' assaults of passengers.

*Id.* at 908–09 (referring to *New Orleans & N.E.R. Co. v. Jopes,* 142 U.S. 18, 24–26, 12 S.Ct. 109, 35 L.Ed. 919 (1891)). The *Doe* court was careful to limit its application of strict liability to cases involving intentional acts by a ship's crew members, noting that the Circuit's "slip-and-fall cases apply the *Kermarec* standard of reasonable care under the circumstances." *Id.* at 910.

■ Although no case is directly on point, this Circuit's cases on which *Doe* relied in recognizing the dichotomy in standards between intentional and unintentional torts have consistently found that a ship operator owes its passengers a duty

to act reasonably under the circumstances in personal injury claims involving unintentional torts. *See, e.g., Luby v. Carnival Cruise Lines, Inc.*, 633 F.Supp. 40, 41 n. 1 (S.D.Fla.1986); *Everett*, 912 F.2d at 1358; *Hass*, 1986 WL 10154, at *1. In a similar vein, this Circuit's decisions have repeatedly held that a ship operator "is not liable to passengers as an insurer, but only for its negligence." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1334 (11th Cir. 1984); *see also Everett*, 912 F.2d at 1358 n. 3 (same); *Luby*, 633 F.Supp. at 41 n. 1 ("The vessel is not, however, the insurer of the safety of the passengers.... Merely because an accident occurs, a carrier does not become liable to a passenger."); *Keefe*, 867 F.2d at 1322 (noting that this Circuit has "stressed" that a shipowner is not an insurer).

Admittedly, the cases holding that a shipowner owes passengers a duty of reasonable care under the circumstances are cases sounding in negligence. Bird thus argues that the standard employed in those cases is only relevant for claims of negligence and is not meant to eliminate other potential causes of action, such as strict products liability. Bird's argument does not persuade. *Doe*, the primary case cited by Bird in support of her argument, recognizes that *Kermarec* and its progeny impose a negligence standard, *as opposed to* a strict liability standard on ship operators: "In sum, while our precedent applies *Kermarec*'s negligence standard in slip-and-fall and other physical condition cases as did *Kermarec* itself, our decision in *Tullis* acknowledged the 'unconditional responsibility' exception for crew member misconduct toward a passenger." *Doe*, 394 F.3d at 910.

*Tullis v. Fidelity & Cas. Co. of New York*, 397 F.2d 22 (5th Cir.1968), the deci-

sion cited in *Doe*, involved a plaintiff who was injured while exiting the defendant's ship. In adjudicating passenger personal injury claims, the court held that "[t]he liability basis is negligence with the only apparent exception being the unconditional responsibility of the carrier for the misconduct of the crew toward the passengers." *Id.* at 23. Strict products liability has never been noted as another exception to the negligence basis for liability. Moreover, one cannot reconcile the imposition of strict liability, imposed although "the seller has exercised all possible care in the preparation and sale of his product" (Rest.2d Torts § 402A(2)(a) (1965)), with the much-cited proposition in this Circuit that a shipowner is not the insurer of its passengers' safety. *See, e.g., Kornberg*, 741 F.2d at 1334.

While precedent establishes reasonable care under the circumstances as the operative standard of care in "slip and fall" and other cases involving the physical condition of the ship, the Court must also determine whether there is any reason to depart from this standard for injuries resulting from a ship operator's provision of food and/or drink to its passengers. *See Doe*, 394 F.3d at 910 ("our precedent applies *Kermarec*'s negligence standard in slip-and-fall and other physical condition cases as did *Kermarec* itself"). Bird cites several cases to show other courts' willingness to recognize strict liability in causes of action arising under admiralty law. All of these cases, however, are inapposite. In *Mink v. Genmar Industries, Inc.*, 29 F.3d 1543 (11th Cir.1994), the Eleventh Circuit affirmed the district court's dismissal of the complaint based upon the expiration of the statute of limitations, expressing no opinion regarding the sustainability of plaintiff's products liability claim. Moreover, *Mink* involved a claim by a ship

passenger against the *ship's manufacturer*, not against the ship's owner or operator, as in the present case.

In *Luby v. Carnival Cruise Lines, Inc.*, 633 F.Supp. at 42 n. 3, also cited by Bird, the court merely noted that plaintiff *did not* allege a design defect in its "breach of duty" claim and, contrary to Bird's argument, did not imply that Carnival could be held strictly liable. Finally, nothing in *Gibbs v. Carnival Cruise Lines*, 314 F.3d 125, 132 (3d Cir.2002), suggests a willingness of the court to recognize strict liability in maritime claims. The opinion merely cited *Mink* for the proposition that a boat designed for maritime use "bears a substantial relationship to traditional maritime activity."

Implicitly acknowledging that she must avail herself of the precedent of *Kermarec* and its progeny to succeed upon her strict products liability claim, Bird argues that while *Kermarec* addressed a shipowner's standard of care where a passenger is

injured by the ship's physical condition, Bird's injuries were caused by the food and drink served aboard Celebrity's ship. Consequently, maritime law leaves Bird free to assert non-negligence causes of action against Celebrity.

(*Plaintiff's Response Memo.* at p. 4).

Even accepting Bird's contention that the Court may distinguish *Kermarec* and its progeny based upon the nature or cause of Bird's injury, Bird offers no principled reason to carve out an exception to the general duty of shipowners to act reasonably under the circumstances. Bird seems to assert that allowing strict products liability claims is appropriate because admiralty courts have done so in other cases. However, as noted above, the cases cited by Bird are wholly irrelevant and unrelated to her proposition.[6]

In refusing to recognize the distinction between licensees and invitees under admi-

---

**6.** A review of the case law demonstrates that passengers suffering from food poisoning have almost universally brought claims sounding in negligence against cruise lines. *See Hernandez v. Motor Vessel Skyward*, 61 F.R.D. 558 (S.D.Fla.1974) (certifying class to determine whether defendants were *negligent* in preparing either drinking water or food in case bringing claims based on breach of contract, *negligence* in exposing the passengers to contaminated food or water, breach of implied warranty of fitness of the food and water and *negligence* in providing inadequate medical care); *Bentkowski v. Marfuerza Compania Maritima, S.A.*, 70 F.R.D. 401, 402 (E.D.Pa.1976) (upholding certification of class of passengers on the issue of defendants' "*negligence* in ... preparing or making available to the passengers ... contaminated food and/or water") (emphasis added); *Faraci v. Regal Cruise Line, Inc.*, 93 Civ 4032, 1994 WL 573305, at *1 (S.D.N.Y.1994) (plaintiffs unsuccessfully sought to certify a class seeking damages from "defendants' alleged *negligence* in operating the ship in violation of health and sanitation regulations")(emphasis added); *Petitt v. Celebrity Cruises, Inc.*, 153 F.Supp.2d

240 (S.D.N.Y.2001) (unsuccessfully attempting to hold defendants liable in *negligence* and breach of contract for illnesses allegedly contracted, in part, from Celebrity's mishandling of the food); *Tateosian v. Celebrity Cruise Services, Ltd.*, 768 A.2d 1248 (R.I.2001) (holding that *negligence* claim based upon alleged food poisoning was time-barred).

*Barbachym v. Costa Line, Inc.*, 713 F.2d 216 (6th Cir.1983), was the lone case located by the Court where a ship passenger alleging food poisoning asserted a strict liability cause of action. In reversing the district court's grant of summary judgment based upon plaintiffs' failure to file their complaint during the time period specified in the contract between the parties, the court did not address the viability of plaintiffs' strict liability claim. While the dearth of cases involving ship passengers asserting claims sounding in strict liability for food poisonings does not definitively establish that the cause of action is prohibited, the paucity of such claims is probative of the general lack of receptiveness of admiralty law to strict liability claims under these circumstances.

ralty law, the *Kermarec* court noted that "to import such conceptual distinctions would be foreign to [admiralty law's] traditions of simplicity and practicality." *Kermarec*, 358 U.S. at 631, 79 S.Ct. 406. Although the Court based its decision, in part, on the peculiar estate interests giving rise to duty distinctions at common law based upon a plaintiff's status, the holding was primarily focused upon minimizing confusion and conflict. *See id.* at 630–31, 79 S.Ct. 406. Similarly, there is no principled basis to establish a new exception to the general duty owed by common carriers, such as Celebrity, to their ship passengers, thereby creating an additional layer of complexity in the law.[7]

For the all the reasons stated above, it is

**ORDERED AND ADJUDGED** as follows:

Defendant, Celebrity Cruise Line Inc.'s Motion to Dismiss the Complaint [D.E. 36] is **GRANTED**. Plaintiff, Shirley Bird's causes of action based on the implied warranty of merchantability (Count "B") and strict products liability (Count "C") are **DISMISSED** for the failure to state a claim. Celebrity shall file an answer to the FAC within ten (10) days of the date of this Order.

---

**7.** Because Bird's strict products liability claim fails under admiralty law, the Court does not address Celebrity's argument that Florida law does not recognize strict liability claims when parties are in privity of contract.