DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**AQUACHILE, INC.,**
Appellant,

v.

**DAWN WILLIAMS, ST. JAMES SMOKEHOUSE, INC.,** and
**SHERWOOD FOOD DISTRIBUTORS, LLC.**
Appellees.

No. 4D21-1453

[December 22, 2021]

Appeal of a non-final order from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Michael A. Robinson, Judge; L.T. Case No. CACE20-003779.

Naim S. Surgeon and Ta'Ronce Stowes of Akerman LLP, Fort Lauderdale, Alexandra M. Mora of Akerman LLP, Miami, and Kristen M. Fiore of Akerman LLP, Tallahassee, for appellant.

David B. Pakula of David B. Pakula, P.A., Pembroke Pines, and Todd S. Stewart of Law Office of Todd S. Stewart, P.A., Jupiter, for appellee Dawn Williams.

PER CURIAM.

In this appeal, we consider whether a forum selection clause in the plaintiff's cruise ticket contract applies in her suit against a non-party to the contract. The contract contained a "Himalaya clause"[1] purporting to extend the forum selection clause, among other rights and defenses, to non-parties. The trial court ruled that the defendant in this case was not entitled to enforce the forum selection clause because the Himalaya clause did not apply to the defendant and was not reasonably communicated to the plaintiff. We affirm.

**Background**

---

[1] *See Davis v. Valsamis, Inc.*, 752 F. App'x 688, 690 n.1 (11th Cir. 2018) ("Himalaya Clauses extend liability limitations to downstream parties and take their name from an English case involving a steamship called *Himalaya*.").

The plaintiff alleges that she became severely ill after she was served contaminated fish on board a Royal Caribbean cruise ship. She alleges that the fish was originally sourced by AquaChile, Inc., and was sold to at least one other company before it was ultimately sold to Royal Caribbean to be served to cruise passengers. She sued AquaChile and two other companies in the supply chain for strict liability, negligence, violations of the Florida Food Safety Act, breach of implied warranty, and breach of express warranty. She filed her complaint in Broward County circuit court. AquaChile moved to dismiss, arguing that Broward County was an improper venue pursuant to a forum selection clause in the plaintiff's contract with Royal Caribbean.

The contract at issue is contained in the "guest ticket booklet" that Royal Caribbean provided to the plaintiff before her cruise. On the cover of the booklet, and in bold print at the top of the first page of the contract, there is an "important notice" advising passengers to carefully read the contract, paying particular attention to section 3 and sections 9 through 11. The forum selection clause appears in section 9(a) and is printed in all-capital letters. It provides that any dispute between the passenger and the carrier must be litigated in Miami-Dade County. A separate clause in section 2(b)—the so-called "Himalaya clause"—purports to extend the forum selection clause, among other rights and defenses, to parties other than the carrier.

Section 2(b) is part of the "definitions" section of the contract and ostensibly defines the word "carrier." It is printed in non-bold, regular-case letters. The first two sentences of section 2(b) define "carrier" to include the vessel, the operator, and related entities and individuals. The third sentence contains the Himalaya clause, which provides in relevant part: "The exclusions or limitations of liability of Carrier set forth in the provisions of this Ticket Contract, as well as all rights, defenses or immunities set forth herein, shall also apply to and be for the benefit of agents, independent contractors, concessionaires and suppliers of Carrier . . . ." In its motion to dismiss, AquaChile argued that it was entitled to enforce the forum selection clause, pursuant to the Himalaya clause, as a "supplier" of Royal Caribbean.

The circuit court denied AquaChile's motion. The court ruled that the Himalaya clause did not apply to AquaChile because it was an indirect supplier to Royal Caribbean and was not engaged in the type of maritime activity that would be expected to be covered by the ticket contract. The court also ruled that the Himalaya clause was not reasonably

2

communicated to the plaintiff because of its physical characteristics and ambiguous language.

AquaChile appealed. We have jurisdiction under Florida Rule of Appellate Procedure 9.130(a)(3)(A), which provides for appeal of nonfinal orders that concern venue.

## Analysis

We review the order denying AquaChile's motion to dismiss de novo. *Palm Beach Cnty. Sch. Bd. v. Doe*, 210 So. 3d 41, 43 (Fla. 2017); *see also Davis v. Valsamis, Inc.*, 752 F. App'x 688, 691 (11th Cir. 2018) (contract interpretation is an issue of law subject to de novo review); *DannaMarie Provost v. Hall*, 757 F. App'x 871, 875 (11th Cir. 2018) (whether the terms of a cruise ticket contract were adequately communicated to passengers is a question of law subject to de novo review). Because the contract at issue is a maritime contract, federal law governs its interpretation. *See Davis*, 752 F. App'x at 691 (citing *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 22–23 (2004)).

## A. Interpretation of the Himalaya Clause

The court denied AquaChile's motion to dismiss primarily because it interpreted the Himalaya clause in the plaintiff's ticket contract not to apply to AquaChile. Himalaya clauses generally extend contractual limitations of liability to certain "downstream parties" expected to take part in the execution of the contract. *Kirby*, 543 U.S. at 20; *Davis*, 752 F. App'x at 690 n.1. Himalaya clauses are construed, according to general principles of contract interpretation, "by their terms and consistent with the intent of the parties." *Kirby*, 543 U.S. at 31. The court must determine whether the plain language of the contract as a whole reflects an intent to extend limitations of liability to the party seeking protection. *See id.* at 31–32; *Davis*, 752 F. App'x at 692. Any ambiguity must be construed against the drafter. *Davis*, 752 F. App'x at 692.

Factors to be considered in determining whether a party qualifies for protection under a Himalaya clause include (1) the nature of the relationship between the party seeking protection and the contracting party, and (2) the nature of the services provided by the party seeking protection compared to the contracting party's responsibilities under the contract. *See id.* at 693 (holding that the defendant was within the reasonable scope of a Himalaya clause in a maritime contract and distinguishing cases where the defendant's relationship to the contracting party was "tangential or uncertain" or the defendant was "engaged in non-maritime activity that one would not reasonably expect to be covered by

3

the contract"); *Caterpillar Overseas, S.A. v. Marine Transp., Inc.*, 900 F.2d 714, 726 (4th Cir. 1990) (stating that, in determining whether a party qualifies for protection under a Himalaya clause in a carriage contract, "the court is to take into consideration the nature of the services performed compared to the carrier's responsibilities under the carriage contract") (internal quotation marks omitted); *La Salle Mach. Tool, Inc. v. Maher Terminals, Inc.*, 611 F.2d 56, 60 (4th Cir. 1979) (explaining that, in determining whether a defendant qualifies for protection under a Himalaya clause in a maritime contract, the court should consider whether the defendant performed a maritime service).

The Himalaya clause at issue here does not reflect a clear intent to extend Royal Caribbean's rights and defenses under the ticket contract to parties like AquaChile. The relevant language refers to "suppliers of Carrier." AquaChile was not a direct supplier of Royal Caribbean and had, at best, an indirect, tangential relationship to the company. The fish that the plaintiff consumed was allegedly sourced by AquaChile but was sold to at least one other company before it reached Royal Caribbean. We do not hold that the Himalaya clause applies *only* to direct suppliers, but it cannot be reasonably read to extend protection to an indefinite chain of indirect suppliers, like AquaChile, that have little to no relationship with Royal Caribbean. *See Davis*, 752 F. App'x at 693.

In addition to being an indirect supplier to Royal Caribbean, AquaChile was not engaged in the type of maritime activity that one would reasonably expect to be covered by the ticket contract. *See id.*; *Caterpillar Overseas*, 900 F.2d at 726. Although Royal Caribbean's activity of serving fish to its passengers might be considered maritime activity, *see Bird v. Celebrity Cruise Line, Inc.*, 428 F. Supp. 2d 1275, 1278–79 (S.D. Fla. 2005), AquaChile's non-maritime business of farming and selling fish to various on-land customers was not transformed into a maritime activity simply because some of its fish ended up being sold to Royal Caribbean at the end of the supply chain.

To the extent the Himalaya clause is ambiguous as applied to the plaintiff's suit against AquaChile, the court properly construed it against AquaChile. *See Sharpe v. W. Indian Co.*, 118 F. Supp. 2d 646, 652–53 (D.V.I. 2000) (concluding that a nearly identical Himalaya clause in a Royal Caribbean ticket contract was ambiguous as applied to the defendants, and would therefore be construed against them, because it failed to clearly define which parties were covered and failed to specify which limitations applied to which parties).

For these reasons, the court did not err in ruling that the Himalaya clause in the plaintiff's ticket contract did not extend the forum selection clause to her suit against AquaChile.

## B. Reasonable Communication of the Himalaya Clause

The court also ruled that AquaChile could not rely on the Himalaya clause to enforce the forum selection clause because the Himalaya clause was not reasonably communicated to the plaintiff. A forum selection clause in a cruise ticket contract must be reasonably communicated to the passenger to be enforceable. *See Lebedinsky v. MSC Cruises, S.A.*, 789 F. App'x 196, 200 (11th Cir. 2019); *Est. of Myhra v. Royal Caribbean Cruises, Ltd.*, 695 F.3d 1233, 1244–46 (11th Cir. 2012), *superseded by statute on other grounds as stated in Caron v. NCL (Bahamas), Ltd.*, 910 F.3d 1359, 1364 n.2 (11th Cir. 2018). Here, because AquaChile can enforce the forum selection clause only through application of the Himalaya clause, the Himalaya clause also must have been reasonably communicated to the plaintiff. *See, e.g., Davis*, 752 F. App'x at 694; *Stotesbury v. Pirate Duck Adventure, LLC*, No. 3:11-cv-00018, 2013 WL 3199353, at *2–3 (D.V.I. June 25, 2013).

Courts apply a two-part test of "reasonable communicativeness," evaluating (1) the physical characteristics of the clause at issue, and (2) whether the passenger had the ability to become meaningfully informed of the clause and reject its terms. *Lebedinsky*, 789 F. App'x at 200. Here, the court focused on the first prong, which considers features such as the placement of the clause within the contract, the conspicuousness of notice on the face of the contract, the size and appearance of the typeface, and the clarity of the language and headings. *See id.* at 200–01 (citing *Est. of Myhra*, 695 F.3d at 1244–45); *Wallis v. Princess Cruises, Inc.*, 306 F.3d 827, 835–36 (9th Cir. 2002).

We agree with the circuit court that the Himalaya clause at issue here was not reasonably communicated to the plaintiff based on its physical characteristics. The Himalaya clause appears in section 2(b) of the ticket contract, which is part of the "definitions" section and ostensibly defines the word "carrier." Section 2(b) is printed in non-bold, regular-case letters, and there is nothing in the "important notice," or anywhere else in the contract, to draw the reader's attention to it. The first two sentences of section 2(b) define "carrier"—somewhat predictably—to include the vessel, the operator, and related entities and individuals. The Himalaya clause does not appear until the third sentence, and it is only loosely related to the apparent topic of section 2(b), defining the word "carrier." There is nothing about the placement, appearance, or heading of section 2(b) to

suggest to the reader that it contains a clause extending Royal Caribbean's limitations of liability to unrelated parties. *See Stotesbury*, 2013 WL 3199353, at *3 (concluding that the Himalaya clause in a Royal Caribbean ticket contract was not reasonably communicated to the plaintiff because it was "buried in fine print" in the "definitions" section of the contract). In addition, to the extent the language of the Himalaya clause is ambiguous as applied to the plaintiff's suit against AquaChile, it could not have been reasonably communicated to her. *See Sharpe*, 118 F. Supp. 2d at 652–53; *Universal Grading Serv. v. eBay, Inc.*, No. 08-CV-3557, 2009 WL 2029796, at *11 (E.D.N.Y. June 10, 2009).

For these reasons, the court did not err in ruling that AquaChile could not rely on the Himalaya clause because it was not reasonably communicated to the plaintiff.

## Conclusion

In conclusion, we affirm the order denying AquaChile's motion to dismiss for improper venue. The court did not err in ruling that AquaChile was not entitled to enforce the forum selection clause in the plaintiff's ticket contract as a "supplier" under the Himalaya clause. The Himalaya clause does not reflect a clear intent to extend Royal Caribbean's rights and defenses under the contract to parties like AquaChile, and it was not reasonably communicated to the plaintiff.[2]

*Affirmed.*

WARNER, GROSS and MAY, JJ., concur.

\*      \*      \*

***Not final until disposition of timely filed motion for rehearing.***

---

[2] We have considered AquaChile's argument that the trial court erred in ruling that a federal court had already rejected its improper venue argument. We agree that the court erred in this respect, but we find the error to be harmless in light of our affirmance of the court's rulings on the merits.